STATE *EX REL.* BURGESS v. BOWMAN.

SCHOOL WARRANT—OFFICERS.—MANDAMUS will not lie to compel a county treasurer to replace in the county treasury the amount of a voidable school warrant which he paid to an assignee after notice from the trustees not to pay. MR. CHIEF JUSTICE POPE *dissents.*

Before ALDRICH, J., Clarendon, January, 1902. Affirmed.

Proceeding for mandamus by J. H. Burgess and other trustees of school district against Samuel J. Bowman, county treasurer. The Circuit decree is as follows:

"This is an application by the relators for a writ of mandamus to compel Samuel J. Bowman, as treasurer of Clarendon County, to replace upon his books as cash and subject to the orders of the board of school trustees of School District No. 5, in Clarendon County, $198, which as treasurer he has paid out upon a warrant alleged to be illegal and void. The pleadings and testimony herein must be read as a part of this decree. To understand the issues it is necessary to say: that the relators are the trustees of said school district No. 5, and respondent is, and was, the treasurer of Clarendon County. R. C. Plowden and John W. Clark, two of the relators, then and now trustees of said school district, were, as they allege, induced by the false statements and promises of one Perry D. Crager, who represented himself to be the agent of W. W. Tutwiler, to sign their names to a blank school warrant; that said warrant was afterwards, without their consent or knowledge, falsely and fraudulently filled out so as to appear regular and legal; that the treasurer paid said warrant after being notified that it was illegal and fraudulent, and warned not to pay the same; and, therefore, it is his plain ministerial duty to replace the money so paid out by him in the treasury, and hold it subject to the orders of the relators.

"The warrant in question is upon a blank, by which is meant a printed form of a warrant, on which appears, in print, everything essential that can be printed, as common to such warrants, with blanks left in which to insert figures, names, supplies purchased, &c. In the copy of the warrant set out below, I have inclosed in brackets the words and figures inserted in the blanks, which, it is alleged, were illegal and falsely inserted therein. The signatures of Messrs.

Plowden and Clark are genuine, and I have not. enclosed them in brackets.

"The warrant is as follows: '$(198.00) State of South Carolina, (Clarendon) County. To the County Treasurer. Sir: Pay to (W. W. Tutwiler) or bearer, (one hundred and ninety-eight & no 100) dollars said sum being allowed for (three) cop(ies) of 'Evans' Arithmetical Study' Edition No. (156) (and three copies Edition No. 120) approved and adopted by State Board of Education, May 15, 1897, and charge the same to the account of the Free School Funds of this school district. R. C. Plowden, John W. Clark, Board of School Trustees, School District No. (5) Date, (Feb. 16) 189(8).'

"Upon the back of the warrant the following writings appear: 'State of South Carolina, (Clarendon) County. Personally came before me the undersigned, who, being duly sworn, made oath that the within account is just, true, and unpaid, and that the supplies therein referred to have been actually delivered. (Signed) W. W. Tutwiler. Sworn to and subscribed before me this (16) day of (Feby.) 189(8). (Signed) R. C. Plowden, School Trustee.' 'Approved and ordered to be paid. (Signed) W. S. Richbourg, County School Commissioner.' Dated Feb. 18, 1898. 'W. W. Tutwiler.' 'Received of the County Treasurer one hundred and ninety-eight dollars in full payment of this claim. Date, Dec. 12, 1898. (Signed) (A. Levi.)'

"Mr. J. H. Burgess is the chairman of the board of school trustees, and it seems that the other members of the board entrusted to him the selection and purchase of school supplies. When Mr. Crager went to Mr. Plowden, on February 16th, 1898, Mr. Plowden was not prepared to answer Crager or to act; he was not willing to select or purchase any of the charts, but he told Mr. Crager that he would consent to what Mr. Burgess would do in the premises; that if Mr. Burgess would agree to buy any of the charts, select what he considered proper, agree upon the price, fill in the blanks with the numbers and supplies desired, and sign the

warrant, he would approve such purchase. As it was some distance to the houses of the other trustees, and as a convenience to Mr. Crager, Mr. Plowden signed the warrant in blank, with the understanding and agreement with Mr. Crager that if Mr. Burgess did not consent to the purchase of any charts and did not sign the warrant, that the matter was ended, his offer refused and his signature to the blank warrant withdrawn, and the warrant would be worthless, 'void,' as Mr. Plowden expressed it. At the request of Mr. Crager, Mr. Plowden also signed the blank for the affidavit under the circumstances above stated. Mr. Plowden turned over the warrant signed by him in blank to Crager, and with it he went to Mr. J. W. Clark. As the result of an interview, Mr. Clark signed the warrant in blank upon the terms and stipulations imposed by Mr. Plowden and turned warrant over to Mr. Crager. Mr. Crager then visited Mr. J. H. Burgess, the chairman, who refused to buy any of his charts. He was not informed of what the other trustees had said and done, knew nothing of the blank warrant or the stipulations thereon, and was surprised when he afterwards heard of the warrant. The next we hear of the warrant, is after it has been filled out and was in its present form, and when it was presented to the county school commissioner and approved and ordered paid by him. About that time or very soon afterwards, Mr. A. Levi, for value and without notice of fraud or defect, purchased this warrant from W. W. Tutwiler after he had endorsed his name on the back thereof. Mr. Levi took the warrant to the treasurer and demanded payment thereof. The treasurer was not in funds then, the taxes had not been collected, and for that reason did not then pay the warrant. Afterwards, on December the 12th, 1898, when in funds, the treasurer paid warrant to Mr. Levi. The warrant is dated February 16th, 1898, and on October 24th, 1898, or thereabouts, the following letter was sent to the treasurer: 'Mr. S. J. Bowman, Treasurer Clarendon County. Dear Sir: We, the undersigned trustees for Santee Township, School District No. 5,

forbid you paying claim for chart in the hands of Mr. A. Levi, in favor of W. W. Tutwiler, which is a fraud against our school district. (Signed) J. H. Burgess, (Signed) R. C. Plowden.'

"Mr. Plowden carried this note to the treasurer, and says, 'I think I told him the circumstances when I gave him the note.' Mr. Burgess also talked with the treasurer about the warrant, warned him not to pay it, and adds, 'Mr. Bowman wrote me to take steps to enjoin him from paying it. I never took such steps, nor did the board do so. When the taxes came in, and the funds were in the treasury, Mr. Levi demanded payment of the warrant, and told the treasurer if he did not pay it, he would take legal steps to force him to do so. The trustees, beyond sending notice above set out and warning the treasurer not to pay warrant, took no step to stop the payment thereof, or to protect the treasurer against the threatened suit of Mr. Levi. The treasurer sought legal advice and was advised that he should pay the warrant. Mr. Levi secured the treasurer against loss, if any should result to him, and the treasurer paid the money over to him. The learned counsel for the relators contended, and with much force, that the warrant was not only void for fraud, but also void because it was not made by the board sitting in session as a board. Also, that the treasurer, after notice of these facts, had no legal right to pay the warrant; and the payment was illegal, and it was his duty to undo the wrong he had done and refund the money. The learned counsel for the respondent contended that, as the warrant was payable to 'bearer,' and as Mr. Levi was an innocent, *bona fide* subsequent purchaser, for value, before maturity, and without notice of any illegality in the warrant, it was the ministerial duty of the treasurer to do what he had done, pay the warrant. He contended, also, that the relators could not, under the pleadings and facts, maintain their proceedings, and that the application herein should be dismissed. If this position is well taken, it would be improper for me to undertake to decide the other issues. 'To be en-

titled to a writ of mandamus, the relator must show that the respondent is bound to the performance of some certain, specific duty of ministerial character, imposed by law; it is *certain* when it must be absolutely performed, and the officer has no discretion. It is *ministerial* where an individual has such legal interest in the performance that neglect becomes a wrong to him.' *Morton, Bliss & Co.* v. *Comptroller General,* 4 S. C., 431; cited with approval, and followed in *Ex parte Lynch, Trustee,* 16 S. C., 39, and later cases. It was not the 'certain specific duty' of the treasurer, 'imposed by law' to refuse to pay said warrant, and certainly it is not his 'certain specific duty imposed by law' to undo his act, repair an alleged past wrong, and replace the money in the treasury. Mandamus lies to compel action, not to redress injuries resulting from acts already done. If we consider that the execution of the warrant herein was illegal, and that it was falsely, fraudulently and corruptly filled out, as above stated, such warrant was not void. For the inquiry now under consideration, it may be conceded that the warrant is *voidable,* but it is not, legally speaking, *void.* The school district trustees constitute a board, clothed with various powers, and, *inter alia,* powers of a *quasi* judicial nature. The authority and power to purchase supplies for the use of the school district, and to issue warrants upon the treasurer in payment thereof, necessarily involves discretion, and is judicial in its nature. It is the 'specific duty' of the treasurer 'imposed by law' to pay these warrants. Assuming that the powers of the board are limited, derived entirely from statute law, and that any act of the board not warranted by law cannot stand, and apply the law to the facts here. It is conceded, and properly so, that the warrant, upon its face, is regular and legal. It complies with the general rule, that facts necessary to confer jurisdiction upon an inferior judicial, or *quasi* judicial, tribunal, must appear upon the face of the record. When such facts do appear upon the face of the record, the final determination of that tribunal stands as valid and legal until it

10—66

is reversed or modified in some manner provided by law. There is no law which requires a county treasurer to refuse to pay a warrant, regular and legal upon its face, because it may be voidable for reasons *de hors* the record. . This calls for legal discretion and judicial authority. The law makes it the duty of the treasurer to pay the warrants of school trustees, and confers upon him no discretionary powers in the premises. The office of the writ of mandamus is to compel action, and does not apply to cases like this, where the object sought is to require the treasurer to undo his acts ; because this proceeding is based upon the idea that the treasurer has committed a breach of duty for which he is liable, and to enforce that liability.

"If the warrant under discussion is *voidable* for fraud, it would seem that Perry D. Crager and W. W. Tutwiler, one or both, could be forced to repay the money, and justly so under the evidence. It may require an action to decide whether or not Messrs. Plowden and Clark, whose act in signing the warrant in blank enabled Crager or Tutwiler to fill up the same so as to appear legal upon its face, and to assign the same to an innocent purchaser, shall be liable to the school district for any loss sustained, or whether or not such an innocent purchaser, or the treasurer, shall make good such loss. It is to be regretted that the relators neglected the requests of the treasurer to have him enjoined, and failed to take any steps in the premises, except to warn the treasurer not to do a 'specific duty,' imposed upon him by law, and by the unlawful act of two of the relators (if these acts are unlawful), when the treasurer has no official authority to justify his refusal to pay the warrant. The real ground of the relators is, that the treasurer should have refused payment of the warrant, subjected himself to a suit or other proceedings, upon the grounds of defense lying within their knowledge. I am aware of no law which required the treasurer to test the legality of a warrant by a legal action. It was the legal duty of the relators, more than any one else, to have instituted proceedings to avoid

the payment of the warrant. If a refusal by the treasurer to pay the warrant had to be excused or justified by the judgment of the Court, it was not his 'specific duty' to refuse such payment.

"Again, if the school district has an action against the treasurer, an ordinary action will afford ample and easy redress. An action against the treasurer, or the treasurer and his bond, is all that is necessary. Counsel for relators urged that such an action would be futile, because the treasurer, to whom the judgment, if any should be recovered, had to be paid, could mark it satisfied without actually paying the money, and could continue to do so indefinitely. This view cannot be sustained. It is difficult to imagine such conduct on the part of a treasurer, and certainly no court can assume that any treasurer would ever attempt such acts. If he did, he would soon be an ex-treasurer, or pleading to an indictment in the criminal courts of this State.

"Wherefore, it is ordered, adjudged and decreed, that the application for the writ of mandamus herein be, and hereby is, dismissed, that the rules herein be, and are, revoked and vacated, and that the respondent be, and hereby is, discharged and dismissed."

*Messrs. Wilson & DuRant,* for appellant, cite: *Warrant was void:* 9 S. C., 151; 19 Ency., 544; 77 Ala., 422; 63 S. C., 189; 16 S. C., 236; 17 S. C., 565; 4 Dill., 209; 15 Ency., 1220. *Warrant not signed by board in session:* 19 Ency., 465, 467. *There is no other adequate remedy:* 9 S. C., 1; 16 S. C., 236. *School warrant is not negotiable:* 1 Dill. Mun. Corp., sec. 406; 1 Ran. on Com. Paper, sec. 337; 1 Dan. on Neg. Inst., 393; 19 Wall, 478; 103 U. S., 539; 18 Wall, 71; 56 Me., 315; 4 Dill. C. C., 209, 233; 19 Ia., 109, 248; 13 Gray, 318; 19 Cal., 170; 11 Cal., 170; 7 N. H., 298; 86 Pa. St., 459; 51 Ohio St., 144; 19 Mich., 486; 63 Mo., 288; 76 Ill., 189; 86 Ill., 514; 4 Neb., 357; 57 Miss., 326; 1 McAll. C. C., 175; 27 Vt., 185; 28 Wis., 674; 37 N. J.,

191; 9 Ind., 224; 11 Minn., 31; 10 Vroom., 394; 67 Barb., 526; 51 N. Y., 338; 23 N. Y., 570; 60 Mo., 504; 13 Neb., 367; 100 Ill., 537; 1 McAr., 522; 23 La. An., 267.

*Mr. Joseph F. Rhame,* contra, cites: *Authority of trustees over school funds:* 22 St., 160. *Duty of treasurer:* 22 St., 169. *Duty of changing books is not imposed by law:* 19 Ency., 2 ed., 724; Code, 1902, 400, 433, 1193. *When writ can issue:* 18 S. C., 150; 19 Ency., 2 ed., 724; 13 Ency. P. & P., 497; 16 S. C., 39; 15 S. C., 322; 25 S. C., 100; 30 S. C., 519; 31 S. C., 81; 14 Ency., 18.

April 20, 1903. The opinion of the Court was delivered by

MR. JUSTICE GARY. The facts of this case are fully set out in the judgment of his Honor, the Circuit Judge, which will be reported. The practical question presented by the exceptions is whether the proceeding by mandamus is the proper remedy in this case. The reasoning and authorities cited by his Honor, the Circuit Judge, so conclusively show that the mandamus is not the appropriate remedy in this case, that we deem it unnecessary to add anything to what is said by him.

It is the judgment of this Court, that the judgment of the Circuit Court be affirmed.

MR. CHIEF JUSTICE POPE, *dissenting.* On the 16th February, 1898, the petitioners, R. C. Plowden and John W. Clark, as board of school trustees of School District No. 5, issued a school certificate, wherein they directed the county treasurer, the respondent, Samuel J. Bowman, to pay to W. W. Tulmiler or bearer, $198, said sum being allowed for three copies of Evans' Arithmetical Study, edition No. 156, and three copies, edition No. 120, approved and adopted by State Board of Education, May 15th, 1897, and charge the same to the account of the free school funds of this school district. This school certificate was supported by the affida-

vit of W. W. Tutwiler, that the account for school supplies
was just, true and unpaid, that such school supplies had been
actually delivered; such affidavit was made before said Rob-
ert C. Plowden in his official character as school trustee, and
being a part of said school pay certificate, on the 16th day
of February, 1898; W. S. Richbourg, as county school com-
missioner for Clarendon County, S. C., on the 18th day of
February, 1898, indorsed his approval on said school pay
certificate, and on the same last day the payer of said school
pay certificate transferred the same for value to A. Levi, a
citizen of Clarendon County, S. C., who presented the same
for payment to the respondent, Samuel J. Bowman, as trea-
surer of Clarendon County, S. C., who declined to pay the
same on account of lack of funds in his hands at that time
payable to School District No. 5; but subsequently, to wit:
on the 12th day of December, 1898, the said treasurer, Sam-
uel J. Bowman, paid the said school certificate in full to the
said A. Levi. Before the payment was made, however, all
three members of the board of trustees of said School Dis-
trict No. 5 gave verbal and written notice to said Samuel J.
Bowman, as treasurer, not to pay said school certificate, on
the ground that the same had been issued to W. W. Tutwiler
on the condition that the same, before being effectual, should
be agreed to and approved by the petitioner, J. H. Burgess,
and that said W. W. Tutwiler, in disregard of his agree-
ment and in fraud, had presented the same for the approval
of W. S. Richbourg, as county school commissioner of
Clarendon County, and obtained his approval thereof, and
thereafter transferred the same for value to A. Levi. When
the board of trustees for School District No. 5 served their
notices upon the treasurer, Samuel J. Bowman, he requested
and insisted that they should take some proceedings in law
to enjoin his payment of said school certificate. This they
neglected to do. Thereafter, under the advice of his
counsel, learned in the law, the said county treasurer paid
the claim. On the 17th May, 1900, the said board of trus-
tees for School District No. 5 presented their petition in the

Court of Common Pleas for Clarendon County, wherein they alleged all of the foregoing facts against the said county treasurer, Samuel J. Bowman, as defendant, and prayed that the writ of mandamus might issue, requiring said county treasurer, in effect, to "change his books, that his school district might have credit therein for the said sum of $198, which was improperly paid to W. W. Tutwiler's transferee, A. Levi." The said Samuel J. Bowman answered the rule. The proceeding came on to be heard by Judge Aldrich, who denied the petitioners any relief whatever, and dismissed their petition. From this decree of Judge Aldrich, the petitioners now appeal to this Court upon the following grounds:

"1. Because his Honor erred, it is respectfully submitted, in deciding that 'It was not the "specific duty" of the treasurer, 'imposed by law,' to refuse to pay said warrant. (a) Because the warrant having been procured by fraud and breach of trust, was void, and after he had notice of such fraud, it was his specific duty to refuse payment. (b) Because the said warrant was void, *ab initio,* because it was not made by the board sitting in session as a board, and being a void warrant, could impose no duty and convey no rights. (c) Because the respondent had no right or discretion to refuse the plain positive instructions of the board of school trustees, contained in the prohibitory notice served on him by two members of the board.

"2. Because his Honor erred, it is respectfully submitted, in deciding that mandamus is not the proper remedy in this case; whereas, it is respectfully submitted: (a) There is no adequate remedy at law which can be pursued by any one against the said treasurer until such time as he goes out of office. (b) The pleadings and evidence show that the remedy desired is a change made in the books of the said treasurer, as they, at present, are incorrect, and further show how they are incorrect.

"3. Because his Honor erred, it is respectfully submitted, in deciding: (a) That it is the duty of the county treasurer to pay the warrants of the school trustees, even if the same

are void. (b) That it was the duty of the respondent to disregard the positive instructions of the board of school trustees prohibiting his paying said warrant.

"4. Because his Honor erred, it is respectfully submitted, in deciding that the county treasurer is bound to accept as correct the facts appearing upon the face of a warrant, after actual knowledge that said statement is untrue, and that said warrant is a forgery and is void.

"5. Because his Honor erred, it is respectfully submitted, in deciding that it was the legal duty of the relators to have instituted proceedings to avoid the payment of the said warrant; whereas, if the said warrant was void, the said Samuel J. Bowman should not have paid same, as no rights could be claimed under it, and even if the said warrant was voidable, only then the notice signed by J. H. Burgess and R. C. Plowden, in their official capacity as trustees, was sufficient to avoid same, and to hold said Samuel J. Bowman, as county treasurer, harmless.

"6. Because his Honor erred, it is respectfully submitted, in deciding that the said warrant was legal on its face, when the pleadings and testimony showed that it was drawn when there was no money then actually to the credit of the said board on that account in the hands of the county treasurer.

"7. Because his Honor erred, it is respectfully submitted, in deciding—if his decree herein can be construed as so deciding—that the county warrant, a copy of which he sets out in his decree, is a negotiable instrument, and that an innocent purchaser for valuable consideration is protected by the application of the rules of law applicable to negotiable instruments; whereas, it is submitted, that a county warrant of the nature of this one is nothing but an order for the payment of money, which is revocable by the officers drawing same, is transferable but not negotiable, and the purchaser of one takes it subject to all the defects and all the equities which could be set up against the original payee.

"8. Because his Honor erred, it is respectfully submitted, in discharging the respondent and refusing the peremptory

writ of mandamus prayed for, because: (a) The pleadings and evidence show that the respondent failed and refused to perform a plain ministerial duty as county treasurer after the proper demand had been made upon him to do so. (b) Because mandamus was the only remedy which the relators had, and is the proper remedy."

We will now briefly express our views upon the questions presented by the grounds of appeal as presented for our consideration. The true nature of mandamus is very correctly set forth in the 13 vol. of the Encyclopaedia of Pleading and Practice, 487: "A writ of mandamus is a command issuing from a court of law of competent jurisdiction in the name of the State or sovereign, directed to some inferior court, or to some officer, corporation or person, and requiring the performance of a particular act or thing therein specified, which pertains to the duty of such court or person." Or as the law governing mandamus, as laid down in *Morton, Bliss & Co.* v. *Hoge, Comptroller General,* 4 S. C., 472: "To be entitled to the writ, the relators must show that the respondent is bound to the performance of some specified duty imposed by law of a ministerial character, and in the performance of which the relators have a legal interest." Is the Court of Common Pleas possessed of jurisdiction to hear and determine applications for writs of mandamus? The Constitution of this State, section 15, of article V., provides: "The Court of Common Pleas shall have original jurisdiction, subject to appeal to the Supreme Court, to issue writs or orders for injunction, mandamus, *habeas corpus* and such other writs as may be necessary to carry their powers into full effect * * *"

We will now determine if the writ should issue. We are inclined to take a different view of this proceeding from that taken by the Circuit Judge, for it seems to us that there was a duty owed by the respondent as county treasurer to School District No. 5; he was the custodian of the funds belonging to the school district; he was bound to know the law governing the disbursement of the funds of that school district; he

was bound to know that there were no funds in his hands as treasurer belonging to that school district on the 18th February, 1898, and that any order drawn on him as treasurer by the trustees of School District No. 5 when there were no funds belonging to that school district in his hands, was void under the law. Therefore, when he afterwards, to wit: 12th December, 1898, paid this claim under the protest and the notice of its illegality by said board of trustees of School District No. 5 not to pay said void order, he violated his duty to such School District No. 5, which violation consisted in reducing the fund belonging to such school district to the extent of $198, so improperly paid; therefore, he was bound to replace that exact sum of $198 to the credit of said school district. Such act was a plain ministerial duty, for which mandamus would lie to compel performance thereof. As was well said by Mr. Justice Eugene B. Gary, in the opinon delivered by him in the case of *Loan and Exchange Bank of S. C.* against *Shealy, county treasurer of Lexington County,* 62 S. C., 345, 40 S. E., 674: "It was evidently the intention of the legislature that all those having a duty to perform with reference to school districts should be fully informed with reference to the fund apportioned to the school districts. Realizing the great danger of conferring upon the boards of trustees unlimited power to enter into contracts within the scope of their agency, the legislature enacted the provision, 'that all contracts which boards of trustees may make in excess of the funds apportioned to their districts shall be void.' Section 53, Act of 1896. It likewise limited the power of the boards of trustees by providing that they should only be 'capable of contracting and being contracted with to the extent of their school fund.' Section 31, Act of 1896." The respondent, as county treasurer, was bound to know these provisions of the law. He could not pay this claim on the 18th day of February, 1898, because of the want of school funds. He did not have the funds to pay this claim on the 30th June, 1898, which date ended the scholastic

year. He did not have the funds on the 12th December, 1898, which was in a new school year, and presumably arising from the taxes which commenced to be paid 1st October, 1898. It will not embarrass the county treasurer to pay back this sum of $198. There is nothing in the law to forbid his correction of this error. All that will happen will be that School District No. 5, of Clarendon County, will have $198 to its credit on the books of the county treasurer, which sum, in the eyes of the law, should have been there on the 12th day of December, 1898. Under the decision of *Morton, Bliss & Co.* against *Hoge, as Comptroller General, supra,* the relators have shown that the respondent is bound to the performance of some specified duty imposed by the law of a ministerial character and in the performance of which the relators have a legal interest, for it was the specific duty of the respondent to keep the funds belonging to School District No. 5 in his hands until paid out on claims, as required by law. The correction of an error in dollars on the books of the county treasurer is a ministerial duty. In the performance of this duty by the county treasurer, the relators have a legal interest, for by law they control the management of the finances of the school district.

It is suggested, however, that a majority of this board of trustees put it into the power of Tutwiler to practice this imposition upon the holder of the claims of Tutwiler. That cannot prevail here, because Tutwiler and A. Levi were bound by all the safeguards thrown by the law upon the issuance of any such order. This is no evasion of the law merchant. The specific character of the whole transaction showed that this attempted exercise of power by this board of trustees had to be grounded upon the school law of this State. When the agents of a State government seek to issue bonds, even innocent holders for value without notice are bound, if such bonds were issued without the agents of the government having legal power to do so. *Bond Debt Cases,* 12 S. C. Such being our views, we are led to sustain all the exceptions which correspond to the principles of

law herein announced, and overrule any others.    But we wish it distinctly understood that we do not pass upon any questions as to A. Levi's right against School District No. 5, or these two appellants, Robert C. Plowden and John W. Clark, if any such questions can be raised.

For these reasons, I think the judgment of this Court should be, that the judgment of the Circuit Court be reversed, and that the action be remanded to the Circuit Court, with directions to issue a writ of mandamus as prayed for.