### POWELL *ET AL.* v. HARGROVE *ET AL.*

#### (134 S. E., 380)

1. CONSTITUTIONAL LAW.—A statute is presumed valid, which presumption extends to everything in the act and on which it is based.

2. CONSTITUTIONAL LAW.—Validity of statute must be sustained, if possible, by any reasonable construction of Constitution.

3. STATUTES.—Acts 1925, p. 691, providing for division of Dillon County into high school districts, is not special legislation, in violation of Const., Art. 3, § 34.

4. SCHOOL AND SCHOOL DISTRICTS.—Acts 1925, p. 691 (34 Stat., 691), providing for the division of Dillon County into high school districts, *held* not violative of Const., Art. 11, § 5, as disregarding provisions thereof for division of Dillon County into suitable school districts.

5. SCHOOLS AND SCHOOL DISTRICTS.—Acts 1925, p. 691 (34 Stat., 691), providing for division of Dillon County into high school distrcts, *held* not to interfere with or diminish school taxes or method of apportionment thereof, in violation of Const., Art. 10, § 6.

6. SCHOOLS AND SCHOOL DISTRICTS.—Acts 1925, p. 691 (34 Stat., 691), providing for division of Dillon County into high school districts, *held* not violative of Const., Art. II, § 7, requiring separate schools to be provided for white and colored races.

7. CONSTITUTIONAL LAW.—One not interested in the subject of a statute, and not injuriously affected thereby, cannot attack its provisions.

8. SCHOOLS AND SCHOOL DISTRICTS.—Acts 1925, p. 691 (34 Stat., 691), providing for division of Dillon County into high school districts and vesting County Board of Education, with power to levy taxes for support of high schools, *held* not violative of Const., Art. 10, § 5, in view of Article II, § 3, and Civ. Code 1922, § 2595.

9. CONSTITUTIONAL LAW.—Any other section of Constitution may be considered in determining meaning of a particular section.

10. CONSTITUTIONAL LAW.—Acts 1925, p. 691 (34 Stat., 691), vesting County Board of Education of Dillon County with power to levy taxes for support of high schools, *held* not a delegation of power to assess and collect taxes, in violation of Conts., Art. 10, § 5.

11. SCHOOLS AND SCHOOL DISTRICTS.—Acts 1925, p. 691 (34 Stat., 691), vesting County Board of Education of Dillon County with power to tax for support of high schools, *held* not violative of constitutional provisions intended to limit public debt, particularly Article 8, §§ 3, 7 and Article 10, §§ 5, 6, 8, 11–13.

12. SCHOOLS AND SCHOOL DISTRICTS.—In absence of constitutional inhibition, General Assembly has power to direct issuance of bonds
for educational purposes by school or high school district, without
submitting question to vote of people.

Before DENNIS, J., Dillon, July, 1925. Order appealed
from affirmed, and original petition dismissed.

Suit for injunction by E. L. Powell and others against
Mrs. John N. Hargrove and others. From an order discharging a rule to show cause, and dismissing their petition
for a restraining order, plaintiffs appealed, and also filed
petition in the original jurisdiction of the Supreme Court,
asserting additional grounds for relief.

*Messrs. McColl & Stephenson,* for appellants, cite: *Dillon
County required to be divided into school districts:* Acts
of 1925, page 691. *Levies by school districts provided for:*
Const. 1895, Art. II, Sec. 6, Civ. Code 1922, Secs. 2603
and 2606. *Bonded indebtedness of school districts limited:*
Const. 1895, Art. X, Sec. 5. *Special acts forbidden:* Const.
1895, Art. III, Sec. 34. *Effect of consolidation of school
districts on bonded indebtedness limitation:* 125 S. E. 138;
118 S. E., 779. *Where territory covered by several political
divisions aggregate bonded indebtedness limited:* 129 S. E.,
833; 128 S. E., 46; 126 S. E., 644; 123 S. E., 834; 121
S. E., 257.

*Messrs. W. C. Moore and Gibson & Muller,* for respondents, cite: *An act in effect amending a general law does not
violate the Special Law clause in the Const. of 1895:* 125
S. C., 389; 125 S. C., 138; 105 S. C., 348; 77 S. C., 351.

August 16, 1926.

The opinion of the Court was delivered by MR. JUSTICE
BLEASE.

The General Assembly, at the regular session of 1925,
passed an Act entitled "An Act to require the County Board
of Education for Dillon County to divide the county of
Dillon into three high school districts, and to provide for

the appointment of trustees for said high schools, to authorize each of said high school districts to issue bonds to provide high school buildings, and to levy a tax to pay the interest and principal on said bonds, and to levy a tax in each district to pay the expenses of maintaining such high schools, including transportation of high school pupils," which was approved by the Governor on the 30th day of March, 1925. Act No. 324, 1925; 34 Statutes at Large, p. 691.

The plaintiffs, as citizens and taxpayers of Dillon County, and as citizens, taxpayers, patrons, and trustees of certain school districts of that county, brought this suit against the defendants, who are respectively members of the County Board of Education of Dillon County, the County Auditor of that county and the trustees of the high school districts created by the Act mentioned, for the purpose of restraining and enjoining the defendants from taking any steps of any kind to put into execution the terms of the Act.

Omitting formal allegations, the complaint alleges, briefly, these things:

(1) That the Act is unconstitutional because it violates subdivisions 4 and 9 of Section 34 of Article 3 of the Constitution, forbidding the General Assembly to pass special laws.

(2) That it violates Section 5 of Article 11 of the Constitution, in that it disregards the constitutional guaranty provided in that section for the division of Dillon County into suitable school districts, by attempting to create and set up over the same territory certain high school districts, which are intended to usurp and destroy the usual and natural functions of the original school districts already created under the authority of the Constitution.

(3) That it violates Section 6 of Article 11 of the Constitution, in that it interferes with and diminishes the school taxes and the method of apportionment of such taxes, that are guaranteed by the Constitution for the benefit of the original school districts.

·  (4)  That it is contrary to Section 7 of Article 11 of the Constitution; for the reason that no provision is made for a separation of high schools for children of the white and colored races; that no provision is made for the creation of high schools or high school districts for members of the colored race.

·  (5)  That plaintiffs, and other citizens of Dillon County, situated as they are, would be deprived of their property by the terms of the Act without due process of law, in that the said Act undertakes to vest in certain high school trustees the arbitrary power of determining how expensively the high school districts and high schools shall be operated, and of determining how great shall be the tax levies, and how large the amount of bond issues to be imposed upon the property of the school districts; that no provision is made for any election upon the question of creating such bonded debt.

(6)  That the Act makes a sudden and drastic change in the fundamental school organization of the county.

Upon the application of the plaintiffs, Hon. E. C. Dennis, Circuit Judge, issued a rule directed to the defendants, requiring them to show cause before him why the injunction prayed for should not be granted.

The defendants, in their return, denied all the material allegations of the complaint, except formal matters alleged therein.  In addition thereto, they took the position that the Act is wise legislation, for the reason that it improves greatly the educational facilities of Dillon County, and in the end will result in the economical benefit of the taxpayers.

Upon the hearing of the cause, Judge Dennis adjudged that the return was sufficient and dismissed the petition for the restraining order.  From the order of Judge Dennis the plaintiffs appealed upon numerous exceptions made and referred to hereinafter.

After hearing of the cause in this Court, plaintiffs presented a petition asking this court to consider grounds, other

than those urged before Judge Dennis, as additional reasons
to have the questioned Act declared unconstitutional. The
defendants have agreed that the Court shall pass upon the
question raised by this petition in the decision of the cause
heard by the Circuit Judge. In view of the fact that a large
number of the citizens of Dillon County are interested in
obtaining an early determination of this cause, and for the
further reason that the educational interests of Dillon
County may be affected by the result of this litigation, this
court has decided to hear the petition of the plaintiffs, filed
herein, along with the appeal from the order of Judge
Dennis.

The petition, in very general terms, attacks the constitu-
tionality of the Act of the Legislature on the ground that it
also violates the following provisions of the Constitution:

Article 8, § 3, requiring the General Assembly to restrict
the power of cities and towns to levy taxes and assessments,
to borrow money, and to contract debts and providing that
no tax or assessment shall be levied, or debt contracted, ex-
cept in pursuance of law, for public purposes specified by
law.

Article 8, § 7, as to bonded indebtedness of municipal
corporations.

Article 10, § 5, as to the levying of taxes for corporate
purposes and the limitation of bonded debts.

Article 10, § 6, as to the purposes for which taxes may
be levied or bonds issued.

Article 10, § 8, requiring that the publication of an accu-
rate statement of the receipts and expenditures of the public
money shall be published with the laws of each regular ses-
sion of the General Assembly.

Article 10, § 11, as to the public debt and issuance of
State bonds.

Article 11, § 12, as to the income from sale or licenses for
sale of liquors.

Article 10, § 13, as to the assessment for taxes.

In our consideration of the questions before us, we are to be governed, of course, by that principle of constitutional law, that the Act under investigation is presumed to be valid, and that this presumption extends to everything in the Act and to everything upon which it is based. We are to be guided, too, by that other principle, that this Court must sustain the validity of the legislative enactment, if it is possible to do so by any reasonable construction of the Constitution, ·even though the Court might differ with the Legislature as to the propriety of the legis·lation. *Chapman v. Greenville Chamber of Commerce,* 127 S. C.; 173; 120 S. E., 584; *Massey v. Glenn,* 106 S. C., 53; 90 S. E., 321; *City of Columbia v. Smith,* 105 S. C., 353; 89 S. E., 1030; *Bradford v. Richardson,* 111 S. C., 205, 97 S. E., 58.

The position of plaintiffs that the Act violates the provisions of Section 34 of Article 3, in that it is special legislation, has been decided adversely to this contention already by this Court, and the holding made heretofore seems to us to.be so conclusive on this matter that we think it is only necessary to cite two cases, which sustain our view, namely, *Arnette v. Ford,* 129 S. C., 526; 125 S. E., 138, and *Walker v. Bennett,* 125 S. C., 389; 118 S. E., 779.

The attack made upon the Act, that it violates Section 5 of Article 11, is not tenable either, under the authority of *Arnette v. Ford* and *Walker v. Bennett, supra.* The act does not disregard the provisions of that section and article of the Constitution as to division of Dillon County into suitable school districts. To the contrary, in Section 10 of the Act, it is distinctly provided that the corporate existence and entity of the common school districts of the county shall not in any way be deemed to be impaired or affected. The Constitution, in Section 5 of Article 11, requires the General Assembly to provide for a liberal system of free public schools for all children between the ages of 6 and 21 years, and for the division of counties into suitable

school districts. This direct and positive requirement cannot be held or construed to mean that the General Assembly is thereby denied the right to go further in the establishing of "a liberal system of free public schools" by creating high school districts, for certainly it cannot be gainsaid that "a liberal system of free public schools" would include high schools as well as that class which we term "common schools."

We do not find anything in the Act which justifies the statement that it interferes with or diminishes the school taxes or the method of apportionment of such taxes as fixed in Section 6 of Article 11. The fact that the common school districts are to remain as formerly established would indicate that such districts will receive hereafter the school taxes which, ordinarily, they will be entitled to receive, and that these taxes will be apportioned as required by that section and article of the Constitution. The further fact, that the Act provides the manner whereby the high schools are established thereunder shall be maintained and supported, shows clearly an intention not to interfere with the taxes which would go to the common schools of the common school districts.

Section 7 of Article 11 of the Constitution reads as follows:

"Separate schools shall be provided for children of the white and colored races, and no child of either race shall ever be permitted to attend a school provided for children of the other race."

Plaintiffs alleged that the legislation conflicts with this provision, in that no provision for a separation of high schools for children of the white and colored races is made; also, that no provision is made for the creation of high schools or high school districts for members of the colored race, although the taxes and bonds attempted to be provided for will cover and embrace all of the property of all of the school districts of the county. The defend-

ants, answering this assertion, say that all of the plaintiffs are white persons, and that no colored taxpayer is before the Court making the question under consideration; and that they say that the plaintiffs here cannot properly raise the question which they make. It seems that the defendants may be right in their position, for it has been held that one who is not interested in the subject of a statute and is not injuriously affected thereby cannot attack its provisions. *State v. Mittle,* 120 S. C., 526; 113 S. E., 335. *St. George v. Hardie,* 147 N. C., 88; 60 S. E., 920. *State v. Braxton County Court,* 60 W. Va., 339; 55 S. E., 382. *Bertram v. Commonwealth,* 108 Va., 902; 62 S. E., 969.

We do not think it necessary or proper, however, to attempt to side-step the issue which has been raised. The provision of the Constitution, which we have quoted, forbids the establishment of schools where the children of both white and colored races are permitted to attend. We do not find a single expression in the legislative enactment which would indicate that there is any intention that the children of the two races shall attend the same high school. In the very first section of the statute, the County Board of Dillon County is authorized and required to divide the county into three centralized high school districts; "such high school districts to be laid off and formed to best serve the educational interests of such county." The high schools to be established in such districts shall be entitled to all the privileges of centralized high schools approved and accepted by the State Board of Education. Since there is no direction on the part of the Legislature that the trustees of the high school districts are to require children of both races to attend the same high schools, it must be presumed that the trustees, and other officials, will carry out the constitutional provision referred to and that at the proper time, in the proper manner, the high schools for colored pupils will be established.

The acts of school trustees are subject to review by the

County Board of Education, and the acts of the County Board of Education are likewise subject to review by the State Board of Education. The Act under examination must be considered along with the general school law, and it is fair to assume that the trustees will perform their duty in the matter of the education of the children of the colored race, just as it will be assumed that they will perform their duty as to the education of children of the white race, and that the State Board of Education, in the performance of its duty will, at the proper time and in the proper way, safeguard the right of all the citizens in educational matters, if the trustees or County Board of Education should, for any reason, fail therein. There is no necessity or good reason for the General Assembly, when enacting a statute, to direct that the Constitution of the State, and its many provisions, shall be observed in carrying out the terms of the legislative enactment. The Legislature is required, of course, to stay within the provisions of the Constitution, and it follows that all the people will take cognizance of those provisions without having their attention directed to them by the language of the statute.

It appears that the constitutionality of the Act is further challenged because it violates Section 5 of Article 10, for three reasons: (1) That it undertakes to set up and create certain new and additional corporate authorities; (2) that the Legislature has no power to delegate a power to authorize the collection of taxes to a political division or subdivision not named in that section; and (3) because the Act undertakes to create as new corporate authorities certain high school districts, which is beyond the legislative power.

The section mentioned declares that the corporate authorities of counties, townships, school districts, cities, towns, and villages may be vested with power to assess and collect taxes for corporate purposes. At first glance it would seem that no other political division or subdivision of the statute,

through its corporate authorities, can be vested with power to assess and collect taxes for corporate purposes. The case of *Jackson v. Breeland,* 103 S. C., 184; 88 S. E., 128, in some respects, apparently so holds. In that case the Circuit Judge, Hon. George E. Prince, was of the opinion that the drainage district formed pursuant to the drainage law of the State, was not a political division or subdivision within the meaning of the Constitution, and he cited the section to which our attention is now directed. We do not think the *Jackson case* is applicable here, however. The act under consideration vests the County Board of Education of Dillon County with power to levy annually sufficient taxes, on all the taxable property in each of the high school districts, for the purpose of maintaining and supporting the high schools in such district. It further provides that the said taxes will be levied and collected annually in the same manner and at the same time as other taxes.

In Section 3 of Article 11 of the Constitution, the General Assembly is required to make provision for the election or appointment of all necessary school officials in addition to those provided for in the Constitution, and that body was also charged with the duty of defining the qualifications, power and duties of such officials. The county boards of education, as now established by law, following the adoption of the Constitution of 1895, were created by the Act of 1897. Such boards are recognized, to some extent, as corporate authorities of their respective counties, Sec. 2595, Vol. 3, Code 1922. They are charged with the supervision of the schools of the county. Since it is held in *Arnette v. Ford, supra,* that the General Assembly had the power to form the high school districts, it necessarily followed that they had the right to place with some corporate authority of the county the power to levy taxes for the corporate purposes of the school districts. By Section 3 of Article 11, the General Assembly also had the power to place upon the County Board of Education of Dillon

County the duty to levy the taxes necessary for the support and maintenance of the schools. It is proper to consider any other section of the Constitution in an effort to ascertain the meaning of any one particular section. The purposes of the framers of the Constitution cannot always be gathered from a study of any one particular article, or section of an article. It is necessary oftentimes to read the whole instrument in order to gather the full intention of those who were charged with laying down a chart for the guidance of the lawmaking bodies which came thereafter.

The plaintiffs further allege that, even if the Act does not violate Section 5 of Article 10, by the creation of a new governmental agency, still under the same section of that article, the Legislature, by necessary implication, is forbidden to delegate power to assess and collect taxes to any governmental agency in their name. We think in the discussion already had, we have answered this objection. In addition to what has been said, however, we call attention to the wording of the Act, which distinctly provides that the taxes shall be collected in the same manner and at the same time as other taxes. We do not think it was required of the Legislature to go into exact detail as to the exact time when the taxes would be assessed or collected, or that it was incumbent that the Act state the officers who are to make the collections. The general laws of the State provide that taxes for county purposes and for school purposes shall be paid to the county treasurer of the respective counties. The language of the Act is definite enough, and we can see no constitutional objection to it because of the language of the cited section.

The general allegation that the act is null and void, because it is contrary to all the provisions of the Constitution intended to limit public debt and to rest the same upon the taxpaying citizens, refers to numerous sections and articles of the Constitution, mentioned hereinabove. It is useless to repeat all of these here.

We have not been cited to any language of the Constitution which forbids the General Assembly from directing the issuance of bonds for educational purposes by a school district, or high school district, without submitting the question to a vote of the people. On the other hand, we think that, within the proper limitations, the Legislature distinctly has that power. Unless something in the Constitution forbids the lawmaking body from exercising a power of this kind, authority is vested in that branch of our government. *Carrison v. Kershaw County,* 83 S. C., 88; 64 S. E., 1018; *Arnette v. Ford, supra; Lillard v. Melton,* 103 S. C., 10; 87 S. E., 421.

A very close reading of the Act shows that there is no disposition to violate any section of the Constitution as to the limitation of bonded indebtedness by the county, or any political division or subdivision thereof. In Section 3, wherein the authority to issue and sell bonds is given, it is distinctly stated that such bonds shall not exceed 8 per centum of the assessed valuation of the taxable property in each of the said high school districts. And a further proviso is made that the act shall not be deemed or held to intend or purport to authorize the issuance of bonds in excess of any limit imposed by the Constitution of the State. From the language of this section, it cannot be doubted that the Legislature had in mind all the provisions of our Constitution with reference to the issuance of bonds for public purposes, and that the whole purpose was to stay, clearly, within the letter and spirit of the Constitution.

In our review of the questions raised, we may not have called special attention to some one or more of them, but we have considered all the questions, and regard what we have written as answering all the objections made as to the constitutionality of the Act.

It is our opinion that there is nothing in the Constitution which forbids the enactment of the Act. The order of Judge Dennis is therefore affirmed in all respects. It is also ordered

that the petition, filed in the original jurisdiction of this Court, be and the same is hereby dismissed.

MESSRS. JUSTICES WATTS, COTHRAN, and STABLER, and MR. ACTING ASSOCIATE JUSTICE PURDY concur.

MR. CHIEF JUSTICE GARY did not participate.