## 12153

HILDEBRAND *ET AL.* v. HIGH SCHOOL DIST. No. 32. *ET AL.*

(136 S. E., 757)

1. SCHOOLS AND SCHOOL DISTRICTS—THAT LESS THAN ONE-THIRD OF ELECTORS OF ONE OF FIVE COMMON SCHOOL DISTRICTS EMBRACED IN PROPOSED HIGH SCHOOL DISTRICT SIGNED PETITION THEREFTOR HELD NOT TO PRECLUDE FORMATION OF DISTRICT WITHOUT NEW PETITION (CIV. CODE 1922, §§ 2599, 2716–2738).—Under Civ. Code 1922, §§ 2716–2738, where, after presentation of petition for formation of high school district of territory embraced in five common school districts, it is ascertained that less than one-third of electors of one of districts signed petition, the high school district may be formed anyway of the remaining four districts without a new petition, notwithstanding section 2599.

2. SCHOOLS AND SCHOOL DISTRICTS—IRREGULARITIES IN FORMATION OF SCHOOL DISTRICTS DO NOT AFFECT CORPORATE CAPACITY THEREOF (CIV. CODE 1922, § 2725.—Irregularities in the formation of high school

districts and the failure to comply precisely with the law do not affect the corporate capacity of such districts, under Civ. Code 1922, § 2725.

3, SCHOOLS AND SCHOOL DISTRICTS—HIGH SCHOOL DISTRICT IS NOT LIMITED IN AREA TO 49 SQUARE MILES (CONST. ART. 11, § 5; CIV. CODE 1922, § 2726).—A high school district is not limited in area to 49 square miles, notwithstanding Const. Art. 11, § 5, or Civ. Code 1922, § 2726.

4. CONSTITUTIONAL LAW—COURT SHOULD ENDEAVOR TO HARMONIZE PROVISIONS OF CONSTITUTION ITSELF AS WELL AS STATUTES AND CONSTITUTION.—It is the duty of Supreme Court to endeavor to harmonize not only legislative enactments with the Constitution, but various provisions of the Constitution itself.

5. CONSTITUTIONAL LAW—GENERAL ASSEMBLY'S CONSTRUCTION OF CONSTITUTION, EVIDENCED BY ENACTMENTS, THOUGH NOT BINDING, WILL BE GIVEN DUE CONSIDERATION.—General Assembly's construction of constitutional provisions, evidenced by its enactments, while not binding on Supreme Court, will be given due consideration at all times.

6. SCHOOLS AND SCHOOL DISTRICTS—INTENT OF TRUSTEES OF HIGH SCHOOL DISTRICT TO EXCEED DISCRETION AND CONSTRUCT BUILDING OF SUFFICIENT SIZE FOR CONSOLIDATED SCHOOL FOR ALL GRADES HELD NOT SHOWN.—Intent of trustees of high school district to go beyond their discretion and construct a building for use as consolidated school of all grades rather than a mere consolidated high school *held* not shown.

7. APPEAL AND ERROR—IN SUIT TO ENJOIN SALE OF HIGH SCHOOL DISTRICT BONDS, COURT'S STATEMENT THAT BONDS HAD BEEN ISSUED AND SOLD, IF TECHNICALLY ERRONEOUS, HELD NOT PREJUDICIAL.—In suit to restrain sale of high school district bonds and purchase of site for school building, Circuit Judge's statement that bonds of consolidated high school had been issued and sold, if technically erroneous, in that contract for sale only had been made, *held* not prejudicial.

Before DENNIS, J., Sumter, June, 1926.    Affirmed.

Suit by R. M. Hildebrand and others in behalf of themselves and others against High School District No. 32, its trustees, and others. Decree for defendants, and plaintiffs appeal.

Decree of the Circuit Judge was as follows:

"This is an action brought by the plaintiffs as property owners, white citizens, residents, tax-payers, and qualified

electors in certain school districts in Sumter County, here-inafter referred to, against the defendants, being High School District No. 32, the trustees of said district, the Auditor and the Treasurer of Sumter County. The object of the action is to restrain the defendants from selling bonds and from buying a site and erecting a high-school building in High School District no 32, and to prevent the assessment and collection of taxes for said purposes.

"The contention of the plaintiffs is that High School District No. 32 has been improperly formed; that the law has been violated in the formation of this high school district in that the petitions were not proper and in that the high school district contains a larger area than is permitted by the Constitution; also, that the trustees intend to erect a building larger than is necessary for high school purposes, with the intention of using it for the graded school classes as well as high school classes.

"At a meeting of the Sumter County Board of Education on July 28, 1925, held in the courthouse, the Board considered the petition filed. by the qualified electors of School Districts Nos. 8, 9, 10, 11, and 25 for the consolidation of said districts as a high school district for the purpose of establishing a consolidated high school. At this meeting there were present trustees representing all of the petitioning districts, with other interested citizens of the districts. The petitions were in due form, and a committee was appointed which reported that more than one-third of the qualified electors of the districts Nos. 8, 9, 10, and 11 had signed the respective petitions for the consolidated high school, but that the petition from district No. 25 was signed by less than one-third of the qualified electors of District No. 25. Upon the failure of the petition from District No. 25, the representatives of Districts 8, 9, 10, and 11 asked that the consolidated district, comprising the four districts above named, be formed, leaving out School District No. 25, in which the petition had failed. The matter came up for

consideration before the County Board of Education, and a resolution was unanimously adopted forming school districts 8, 9, 10, and 11 into a high school district consolidated for high school purposes. The trustees of the Consolidated High School were named according to law, the chairman of the board of trustees of each school district becoming a member of the consolidated high school district.

"This consolidated high school district proceeded immediately in functioning as a consolidated high school district. In September, an election was held pursuant to notice duly published, to authorize the sale of bonds not to exceed $65,-000, nor less than $40,000, for the purpose of erecting a building in said high school district and for equipping the same for school purposes. This election was carried in favor of the bonds; the bonds were issued and sold, but before delivery this action was instituted.

"It sems to me that the action of the Board of Education of Sumter County was legal when it undertook to form High School District No. 32 out of four school districts rather than five, as first contemplated. It is not contended that this action was irregular except that the petitions called for the consolidation of five school districts rather than four. It seems to me that it was not necessary to have new petitions from the four districts, but that the board was acting within its power when it omitted District No. 25 and included the other four in a high school district.

"The contention that the high school district is larger than permitted by the Constitution seems to me not well founded. The consolidation of school districts into a high school district for high school purposes does not destroy the identity of the individual school district, and to apply the limitation of territory to high school districts formed by consolidating that applies to school districts would prevent the formation of any of these high school districts. Therefore I conclude that this restriction or limitation of territory is not applicable in this case.

"It is contended very strenuously on behalf of the plaintiffs that the object of the trustees of this high school district is to put up a building sufficient in size to have all of the grades taught in this building, and that instead of a mere consolidated high school, it is a consolidated school to which the children of all grades will be required to go. I do not think that I can pass on this question under the present proceeding. It is not apparent to me that these trustees in selling these bonds and erecting the building they contemplate are going beyond the discretion resting in them as trustees. I cannot undertake to say what size building shall be erected.

"It seems to me clearly contemplated by the law that the building which is to be erected shall be for high school purposes, as this is a high school district and not a regular school district. Ie seems to me that the question of the use to which the building is put would have to come up later, after the building is erected. The large territory included in high School District No. 32 makes it reasonable that a fairly large and substantial school building be erected, but just how large that building should be to take care of future as well as present demands, is beyond my power to determine, and I do not undertake at this time to pass on the question of whether or not this high school building when erected can be used for other than high school grades.

"After hearing argument of counsel for plaintiff and defendant, it is ordered and adjudged that the establishment of High School District No. 32 is in all respects legal and proper, and that the bonds have been legally issued and sold, and the defendants are entitled to deliver said bonds and collect therefrom and proceed with the erection of a high school building, as they are planning to do, and the temporary restraining order is set aside and the injunction prayed for is denied and the complaint is dismissed."

*Messrs. Purdy & Bland and Geo. D. Shore,* for appellants, cite: *Division of counties into schood districts:* Const. 1895,

Art. 11, Sec. 5; Civ. Code, 1922, Sec. 2599. *Consolidation of school districts must be on petition of all districts concerned:* 130 S. E., 645. *Area of high school districts:* Civ. Code, 1922, Sec. 2726. *Act of Legislature sustained where possible by reasonable construction:* 134 S. E., 380; 127 S. C., 173; 111 S. C., 305; 106 S. C., 53; 105 S. C., 353. *Organization of high school districts in addition to common school districts not prohibited:* 134 S. E., 380; 129 S. C., 526. *Case distinguished:* 125 S. C., 389. *High school districts created bodies corporate:* Civ. Code, 1922, Sec. 2725.

*Messrs. Lee & Moise, Mendel L. Smith and Harby, Nash & Hodges,* for respondents, cite: *Creation of high school districts in adjoining counties:* 33 Stat., 181. *Division of counties into school districts:* Const. 1895, Art. 9, Sec. 5. *Same: formation of high school districts not thereby limited:* 134 S. E., 380; 129 S. C., 526; 125 S. E., 138. *Dissolution of temporary injunction on motion:* 69 S. C., 551; 48 S. E., 613; 33 S. C., 410; 12 S. E., 96.

February 15, 1927.

The opinion of the Court was delivered by MR. JUSTICE BLEASE.

The decree of Hon. E. C. Dennis, Circuit Judge, sets forth all the facts of this cause which appear necessary to be stated for the determination of the legal questions involved. Let it be reported. The plaintiffs have appealed from the decree on circuit.

It does not seem important to set forth the exceptions in detail. We shall adopt, in the main, the statement of the attorneys for the appellants as to the questions really before us for decision, and we shall pass upon each of these as it is stated.

'First. When a petition for the formation of a high school district of the territory embraced in five common school districts is presented to the county board of education, or to the trustees of the several districts, and thereafter it is ascertained that less than one-third of the

electors of one of the districts signed signed the petition, can the high school district be formed, anyway, of the remaining four districts without new petition therefor?

To sustain their position that this question should be answered in the negative, counsel for the appellants cite Section 2599, Vol. 3, Code 1922, and the case of *Goggans v. State Board of Education,* 133 S. C., 183; 130 S. E., 645.

The section referred to, which relates to the division of counties into convenient school districts, contains these provisos:

"Provided, that no new school district shall be erected by the said county board of education, except upon the petition of at least one-third of the qualified electors embraced within the limits of such proposed school district: Provided, further, that no school district shall be consolidated except upon a petition of at least one-third of the qualified voters of the school district proposed to be consolidated."

Construing that section, particularly the last proviso set forth, this Court held in the *Goggans case, supra,* that in so far as the school districts to which the section related, two of these districts could not be consolidated, except upon the petition of the required number of qualified electors from each of the districts affected.

If the case here concerned the consolidation of the kind of school districts referred to in the section cited, the decision in the *Goggans case* would be absolutely controlling, and the position of the appellants would be correct. However, the *Goggans* case is not applicable here. That case bore upon the consolidation of common school districts; it had no bearing upon the formation of high school districts.

The formation of high school districts, and the conduct and operation of high schools therein, are governed by Sections 2716 to 2738, both inclusive, of Volume 3, Code 1922 ("the High School Act"), and acts amendatory thereof. We do not find anything in the law that requires the signing or presentation of petitions of any kind as a

requisite to the formation of a high school district.   It seems clear that under the provisions of Section 2716, *id.,* that the authority to create a high school district, under the general law, is vested in the boards of trustees of common school districts proposed to be embraced therein, subject to the regulations made by the "High School Act" and the regulations of the State Board of Education.

Irregularities in the formation of high school districts, and the failure to comply precisely with the law, do not affect the corporate capacity of such districts for, under Section 2725, Vol. 3, Code 1922, it is provided that where "two or more adjoining school districts * * *, by the adoption of resolutions, authorization of contracts for erection or in any other way jointly or as separate boards of trustees, shall evidence or shall have evidenced an intention to establish a high school district, that is to say, a body corporate, shall be, and hereby is, created, and shall be, and hereby is, deemed to be, and to have been, created at and from the time of the first joint or separate action in any such case and for such purpose," where the trustees have acted pursuant to or under color of authority of any general or special act.

While there may have been some failure in the case at bar to proceed strictly in accordance with the law as to the formation of the high school district herein, we think the section last quoted fully takes care of the situation.   We therefore answer the first question in the affirmative, and approve the Circuit Judge's holding in that regard.

Second.   Is a high school district limited to an area of not more than 49 square miles by the Constitution or the statute law of the State?   Appellants urge that it is, and, therefore, that the district here is illegal; for it is conceded by all parties that the area of the district far exceeds the mentioned number of square miles.   The provision of the Constitution which it is claimed is violated is contained in Section 5 of Article 11, where this language is found:

"The General Assembly shall provide for a liberal system of free public schools for all children between the ages of six and twenty-one years, and for the division of the counties into suitable school districts, as compact in form as practicable, having regard to natural boundaries, and not to exceed forty-nine nor be less than nine square miles in area."

The respondents cite the cases of *Arnette v. Ford,* 129 S. C., 526; 125 S. E., 139, and *Powell v. Hargrove,* 136 S. C., 345; 134 S. E., 380, in support of their position and the decree of the Circuit Judge that the language of the Constitution quoted above, does not apply to high school districts. The attorneys for the appellants assert that the cited cases have not decided the precise point raised here, and, while we are inclined to agree with them as to this, yet the opinions in those cases indicate strongly that this Court was at least disposed to hold that the position of the respondents is well taken.

In the *Arnette case,* the opinion of this Court merely approved the decree of the Circuit Judge. It appears, too, upon a close examination of that case, that perhaps it was not necessary in the determination of the question made in the cause to have gone into an examination of the constitutional provision, quoted above. However, Judge Featherstone, whose opinions always give their own evidence that he has made a capable and exhaustive investigation of a subject, of which he writes in a decree, made this declaration:

"The Constitution provides that all the various counties shall be subdivided into school districts, as these various school districts were intended to function as the primary units in the State's common school system. In another clause of the Constitution it is directed, in effect, that this division into school districts shall be made under a general law, to be enacted by the Legislature, and that no such school

district shall be created by a special law or enactment. There can be no doubt but that the clause commanding that the subdivision shall be made contemplated a division into what may be termed common school districts, and has no reference to the creation of high school districts by the combination of one or more common school districts for high school purposes."

Even if the language of Judge Featherstone in the *Arnette case* was *obiter dicta* in so far as that case was concerned, it was made authority in *Powell v. Hargrove, supra,* for, in the opinion in that case, the declaration of Judge Featherstone was cited with approval. There is involved here, however, a phase which did not enter into either the *Arnette* or *Powell* decisions. The high school district, the creation of which was attacked in each of the cited cases, was created by a special act of the General Assembly. In the case at bar, the proposed high school district is to be formed under the general law. In section 2726, Vol. 3, Code 1922, referring to the area of high school districts, there is found this clause:

"Provided, that this act shall not be deemed or held to intend or purport to authorize the creation of any such high school district which shall be greater in area than may be permitted by the Constitution of this State, and, in case any districts shall be found to exceed such permitted area, the boards of trustees thereof shall be vested with power to designate a portion thereof not greater in area than is permitted by the Constitution, which portion shall thereafter be deemed to constitute such district."

Appellants strongly insist that by the use of the language last quoted, the General Assembly expressly stated its intention to provide a limitation upon the area of all high school districts, and that the limitation provided was that fixed in Section 5 of Article 11 of the Constitution already quoted herein.

The purpose of the "High School Act" was to create high school districts, and to establish and maintain high schools therein.   It was manifest to the General Assembly that the people of the State, especially those residing in rural communities, were no longer content with the primary and grammar schools then in existence, for the education of their children.   They demanded—and the Legislature endeavored to respond to the demand—that they be given the "liberal system of free public schools" which the Constitution of 1895 had commanded the General Assembly to provide. That guaranty, as contained in Section 5 of Article 11, is just as strong and positive as the other part of the Section, which provides that school districts (common school districts, as it has been decided) should not exceed 49 square miles in area.   The provision as to the size of common school districts was intended, in our opinion, to aid in establishing the liberal system of free public schools.   It certainly was not the intention that the limitation as to area should hinder the General Assembly in providing the schools which the Constitution directed it should provide.   Without the clause as to area, or some other protecting language, a Legislature hostile to the system of schools intended to be organized could have made the districts so large, only two to the county, for instance, that the children could not have reached the schoolhouses built, and schools maintained therein, supported by the moneys derived from sources fixed in the Constitution itself.   Perhaps the General Assembly was confronted with this question, which, in a way, also faces this Court:   Is certain language of the Constitution, placed there, obviously, for the purpose of giving the people a liberal system of free public schools, to be used to thwart the main intent of the whole section?

The duty rests upon this Court to endeavor to harmonize not only legislative enactments with the Constitution, but the various provisions of the Constitution itself.   The General Assembly is required, of course,

to stay within the limitations of the Constitution in all of its legislation.   While that body's construction of constitutional provisions, evidenced in its enactments, are not binding upon this Court, they will be given due consideration at all times.   The fact, however, that the lawmaking body, with the purpose in view of observing strictly constitutional provisions, and, to that end, exercises great precaution to make one of its acts come clearly within any possible construction of the Constitution, should not avail to defeat the real intention of the legislation.   Especially is this true when it appears, in the exercise of legislative precaution, the Legislature itself may have misinterpreted the effect of the constitutional provision, with which it was endeavoring faithfully to comply.

The General Assembly cannot obtain in advance, under our system, the opinion of this Court as to the constitutionality of one of its acts; nor could it foresee the construction this Court might adopt.   In its desire to create high school districts, and high schools therein, it could assure itself, however, that many such districts could be formed, and many such schools be organized, by inserting in the act the language contained in Section 2726, *Id.*, quoted hereinbefore.   Had this Section not been included, and thereafter this Court hade declared the legislation void because of failure to comply with the constitutional provision as to the size of the districts, it is reasonable to suppose that no high school districts could have been formed.   It seems to us that the General Assembly was not certain as to the construction to be given the language of the Constitution as to the area of school ditsricts.   As evidence of that, we call attention to the fact that in Section 2726, it used the words, "may be permitted by the Constitution of this state."   If there had been in the legislative mind a fixed view that the area of high school districts could not exceed 49 square miles, and that this Court would so hold, it occurs to us that instead of the expression, "may be" the lawmakers would have used

the one word "is." This slight and simple change would have been conclusive, it seems to us, that the General Assembly intended the area of high school districts to be controlled by Section 5, Art. 11. Again, if the intention to so limit the area had been contemplated, it would have been so easy for a provision to have been inserted in the "High School Act" to the effect that no district should exceed 49 square miles in area.

Since it is our opinion that high school districts are not affected by the constitutional provision as to area of school districts, we do not see how Section 2726 has any effect in limiting the area to 49 square miles as a maximum.

Third. May a school building, such as it appears is proposed to be erected in this instance, be used for general school purposes, and the bonds voted be sold for such purposes?

Under the answer of the trustees of high school district No. 32, and the evidence submitted to the Circuit Judge, he was right in holding that it did not appear that the trustees were contemplating going beyond the discretion which rests in them. The High School Act does not, by its own terms, define what a high school is or shall be. There is nothing contained therein to show what grades or studies shall be taught. Under the act, it seems that all these matters are left to the regulation of the state board of education. And, while it may not be exactly within our province to say so, this does seem to use to be a wise provision. The state board of education is a creature of the Constitution. That board and the county boards of education have general supervision over the public schools of the state. Obviously, the General Assembly had in mind that constantly changes were being made in educational methods and conditions. With the desire to make the high schools of the state permanent, and yet looking forward to progress therein, it deemed it best, as it had the right to do, to leave many things pertaining to such high schools to the board, estab-

lished by the Constitution, for the purposes of supervising the "liberal system of free public schools" which the Constitution looked forward to having established.

The High School Act recognizes and continues the existence of the common school districts; in fact, the basis of the formation of high school districts is the common school district. While the Constitution directed that the several counties should be divided into "common school" districts, nothing was said therein as to the number or character of schools to be established or maintained in these districts, these things being left to the legislative power. The trustees of the several districts, comprising high school district No. 32, will be required, of course, to perform their duties as trustees and to care for the schools in their charge as required by the general school law, subject to the supervision of the county board of education, and the state board of education.

We think, therefore, that Judge Dennis was correct in holdings made by him as to the authority of the trustees in the matter of erecting a building and the expenditure of the moneys to be received from the sale of the bonds. If the trustees should hereafter violate, or attempt to violate, the laws in regard thereto, the plaintiffs, or other interested parties, may have legal redress.

Fourth. Exception is taken to the statement of the Circuit Judge that the bonds had been issued and sold, whereas the proof showed that while the contract for sale had been made, nothing else had been done, and there was only intent to negotiate a sale.

Even if appellants are technically correct in their position, we fail to see how this objection can have any effect in giving them the relief they seek. If the high school district was legally created, and we have so held, it had the right to vote the bonds; in fact, there seems to be no question as to that. If the trustees had the right to sell the bonds, that, of course, includes the right to deliver. The record shows

that a contract to sell has been made. The Court will take judicial notice of the fact that, generally, in effecting a sale of school district bonds, the bonds are first advertised for sale and the sale contracted before the bonds are executed or even printed or engraved. This course is followed as a matter of convenience, and very often for the reason that the exact terms of the bonds depend upon the bid accepted therefor. As stated, even if Judge Dennis was technically mistaken in his holding, we cannot find any prejudicial error therein.

The judgment of this Court is that all the exceptions be dismissed, and the decree of ths Circuit Court is affirmed.

MR. CHIEF JUSTICE WATTS and MESSRS JUSTICES COTHRAN and STABLER concur.

MR. ACTING ASSOCIATE JUSTICE PURDY disqualified.