---
Syllabus.
---

CASE No. 1085.

## *EX PARTE* LYNCH, TRUSTEE.

1. A constitutional provision must, if possible, be so construed as not to abridge the full legislative power vested in the general assembly by Article II., § 1. Implied limitations of legislative power are only admissible when necessary to give proper force to a particular intent expressed in the constitution.
2. A constitution is intended to fix the fundamental principles of government, and limit its powers, but not to legislate on mere details.
3. An act of the legislature is presumed to be constitutional, until the contrary is made clearly to appear by him who asserts the contrary.
4. The provision in Article IX., § 6, of our State constitution, requiring a valuation and assessment of lands to be made in 1870, and *on every fifth year thereafter*, does not inhibit the general assembly from directing a re-assessment within the five years.
5. The provision of Section 78, of the act of 1874, (15 *Stat.* 760,) requiring the auditor to add fifty per cent. to the assessment of the property of a taxpayer who fails to make return of such property for taxation, does not violate Sections 14 and 36 of Article I., nor Section 1 of Article IX., of the constitution.
6. The correction, by the comptroller-general, of an error in a tax duplicate, is not a plain ministerial duty for which mandamus will lie, especially after he has acted upon an application for such correction; nor will such officer, on the relation of a taxpayer, be compelled, by mandamus, to ignore as unconstitutional, a statute imposing a penalty for a default in making return.

---

Original application to the Supreme Court.

Petition for mandamus to the comptroller-general, filed December 7th, 1880, by John Lynch, trustee of Mary E. Allen, and heard on petition, order to show cause and return, on May 2d, 1881. The opinion states the case.

*Mr. Robert A. Lynch,* for the relator.

*Mr. Youmans,* attorney-general, contra.

September 24th, 1881.　The opinion of the court was delivered by

McGOWAN, A. J.　This is a petition in the original jurisdiction of this court for a writ of *mandamus* to compel the comptroller-general to have corrected an alleged error on the tax duplicate for Richland county, and that the true value of a house and lot in Columbia be placed upon said tax duplicate as the amount upon which taxes should be imposed.　The comptroller-general resists the motion upon several grounds, viz. : That no error was committed by the auditor ; that he has no authority to make the abatement demanded ; and that what is asked to be done is not his clear ministerial duty, and, therefore, *mandamus* will not lie.

Section 6, Article IX., of the constitution, is as follows : " The general assembly shall provide for the valuation and assessment of all lands and the improvements thereon, prior to the assembling of the general assembly of 1870, *and thereafter on every fifth year.*"　The general assembly made an assessment in 1875, by act of 1874, and in 1878, in advance of the " fifth year," passed an act which provided for another assessment of lands to be made in 1879, " in the manner and according to the rules prescribed for assessment of real estate," &c.　16 *Stat.* 803.　The manner of making assessments is prescribed by the "Act to reduce all acts and parts of acts providing for the assessment and taxation of property, into one act, and to amend the same."　15 *Stat.* 731.　Section 78 of that act provides, " that whenever any taxpayer shall fail to make returns to the auditor of his county, within the time prescribed by law, it shall be the duty of the county auditor to enter on the tax duplicate, against such taxpayer, the property charged to him the previous year, *with fifty per cent. penalty added thereto,*" &c.

John Lynch, trustee, failed to return for taxation, *under the act of* 1878, a house and lot on the southwest corner of Blanding and Richardson streets, in the city of Columbia, and thereupon John Meighan, the county auditor, in accordance with the legal requirements upon the subject, entered said house and lot on the tax duplicate at its previous assessment of $10,200, and added

thereto *fifty per cent.*, making the taxable value $15,300. To this action of the auditor the relator objected and filed a petition, praying the comptroller-general to have the said fifty per cent. stricken off. The comptroller-general ordered the auditor to submit to the county board of equalization the question of the true value of said house and lot, directing, in case the board should reduce the value, that the fifty per cent. should be attached to the assessment so reduced, instead of the original assessment. Accordingly, the auditor did submit the value to the board of equalization, which reduced the value to $8,000, and this sum was placed on the duplicate as the proper valuation until the next assessment of real estate, but the comptroller-general refused to remit the fifty per cent. already added to the assessment for one year, 1879; thus making the total assessment $12,000. The relator, insisting that it was the duty of the comptroller to correct also the action of the auditor in this particular, filed this petition for a writ of *mandamus* to compel him to do so.

The relator insists that he was not in default in failing to return the house and lot for taxation under the act of 1878, and the auditor had no right to increase the assessment fifty per cent., for the reason that the act of 1878, ordering a new assessment for that year, and the provision in the act of 1874, allowing assessment of fifty per cent. for default, are both unconstitutional and void. In relation to the act of 1878, he insists that the provision of the constitution which requires that after 1870 the assessment should be made " *on every fifth year,*" amounts to a negation of the right to make it at any other time. That raises a question of construction. Does the declaration that the assessment is to be made " on every fifth year," withdraw from the general assembly the right to make it also at some intermediate time?

It is a delicate thing to declare an act of the legislature unconstitutional. This section of the constitution must be construed, if possible, as allowing full force and effect to Section 1, Article II., vesting the full legislative power of the State in the general assembly. Implied limitations of legislative power are only admissible where the implication is necessary, as where

language, conveying a particular intent, cannot have its proper force without such implication. The general assembly has the general power of legislation upon all subjects not prohibited by the constitution. "The legislative department is entrusted with the general authority to make laws at discretion, and is only limited by express constitutional provision." *Cooley Const. Lim.* 87–172. "The constitutionality of a law must be presumed until the violation of the constitution is proved beyond all reasonable doubt, and a reasonable doubt must be solved in favor of legislative action and the act be sustained." *Id.* 182.

As we understand it, the object of a written constitution is to fix the fundamental principles and limit the powers of government, and not to legislate on mere details. It is fixed in its nature, and, therefore, unsuited to contain the laws which from time to time are made necessary by the ever-changing necessities and wishes of the people. A constitution has been defined to be "the fundamental law of a State, containing the principles upon which the government is founded, regulating the division of the sovereign powers and directing to what persons each of these powers is to be confined and the manner in which it is to be exercised."

According to these familiar principles and authorities the presumption is that the act of 1878 is constitutional. The *onus* is upon the relator to make it clearly appear if it is not so. It does not seem to us that the provision which requires the general assembly to make an assessment of real estate "on every fifth year" necessarily amounts to an inhibition against their doing it at another time. The constitution could not have intended that the people of the State should remain under a false and erroneous assessment of real estate for a number of years, for the only reason that a new assessment could not be made except "on every fifth year." It is not a case for the application of the maxim "*expressio unius est exclusio alterius.*" The provision is affirmative merely that the thing shall be done at particular intervals without negative words, such as "and at no other time." It is mandatory so far as it requires the assessment to be made at all events every fifth year, but that is the full intent of the provision, which does not purport to be exclu-

sive and exhaustive. The period indicated is not of the essence, except so far as to require that it shall be done at the times indicated. Lord Mansfield held, in *Rex* v. *Loxdale*, 1 *Burr.* 447: "That there is a known distinction between circumstances which are of the essence of a thing required to be done and clauses merely directory. The precise time in many cases is not of the essence."

When there is no substantial reason why the thing to be done might not as well be done also at some other time, then the courts assume that the intention was that it might be so done. No injury would be done if the assessment were made every year. As was said by Parker, C. J., in *Henshaw* v. *Foster*, 9 *Pick.* 316: "In considering so important an instrument as a constitution, we are not on the one hand to indulge ingenious speculations which may lead us wide from the true essence and spirit of the instrument, nor on the other to apply to it such narrow and constrained views as may exclude the real object and intent of those who framed it."

The general assembly of the State has more than once construed this provision as affirmative merely, and when, in their opinion, the public good demanded it, ordered re-assessments of the lands at times other than "every fifth year." Any other construction, we incline to think, would lead to absurd and alarming consequences.

It is also insisted by the relator that Section 78 of the act of 1874, which requires the auditor to add fifty per cent. to the assessment of the property of a taxpayer who makes default in returning his property for taxation, is illegal and void as repugnant to the following provisions of the constitution:

Section 36, Article I., which declares that "all property subject to taxation shall be taxed in proportion to its value. Each individual of society has a right to be protected in the enjoyment of life, liberty and property according to standing laws."

Section 1, Article IX., which requires the general assembly "to provide by law for a uniform and equal rate of assessment and taxation."

Section 14, Article I., of the Declaration of Rights: "No person shall be arrested, imprisoned, despoiled or dispossessed of

his property, immunities or privileges, put out of the protection of the law, exiled or deprived of his life, liberty or estate, but by the judgment of his peers or the law of the land. And the general assembly shall not enact any law that shall subject any person to punishment without trial by jury; nor shall he be punished but by virtue of a law already established or promulgated prior to the offence and legally applied."

This opens a wide field, but we do not think the case requires a full discussion of these important provisions of the constitution. There is no doubt that the laws for the collection of taxes are summary and not in full accord with the spirit of the constitution, but they are sustained on the ground of State necessity and immemorial usage. It is said in the case of *Parham* v. *Decatur County*, 9 *Ga.* 352, that "the sovereign right to levy and collect taxes grows out of the necessities of the government —an urgent necessity, which admits no property in the citizen while it remains unsatisfied. The right to tax is co-equal with all governments. It springs out of the organization of the government. All property is a pledge to pay the necessary debts and expenses of government."

The Supreme Court of Tennessee, in *McCarrol* v. *Weeks*, 5 *Hayw.* (*Tenn.*) 246, decided that their summary tax laws were constitutional, holding this language: "It is certainly true that they have the character of summary proceedings, and it is equally true that they must of necessity be so; for if the government were necessitated to take the cautious and tedious steps of the common law, in giving personal notice, making up regular proceedings and having a trial by jury, judgment and execution, it would cease to exist for want of money to carry on its necessary operations. Loss of credit and the total extinction of the national faith—the basis of all regular government—must be the inevitable consequences."

In our own case of the *State* v. *Allen*, 2 *McCord* 56, the court says: "We think that any legal process which was originally founded in necessity, has been consecrated by time, and approved and acquiesced in by universal consent, must be an exception to the right of trial by jury, and is embraced in the alternative 'law of the land.'" And in *Harris* v. *Wood*, 6 *Mon.* 643,

the Court of Appeals of Kentucky remark that "taxes were always recoverable (before the adoption of the constitution), not only without a jury, but even without a judge; and the assessment of ministerial officers has been made to operate as an execution on the citizen, and the collector could distrain," &c. The same general doctrine has been asserted in other cases. See *Blackw. Tax T.* 31.

It is urged, however, that the fifty per cent. is not really a tax regulation, but in the nature of *a penalty* for default, and, therefore, cannot be imposed by the mere act of the auditor, without judicial proceeding and verdict of a jury. It is called "a penalty" in the act itself, but its nature is not necessarily changed by the name given. The provision lacks some of the characteristics of a penalty. It differs very materially from the law of 1820, which was construed in the case of the *State* v. *Allen, supra,* to be a penalty, pure and simple. That act imposed a punishment of $10,000 upon any person who should sell lottery tickets in the State, and, as substantially declared, for the purpose of suppressing vice; while the provision under consideration imposes no round sum of money upon the person, but only relates to the assessment of property and in strict regard to its value. The object manifestly was not so much to punish as to prevent defaults in making returns, and in that way to facilitate the collection of taxes. Such provisions have appeared in the tax acts of this State for a long series of years, and we are not aware that the courts have ever enjoined their enforcement. In the case of the *State* v. *Hodges,* 14 *Rich.* 277, Judge Wardlaw, after reviewing all the acts upon the subject, in his learned note, says: "A summary execution against defaulters has prevailed from the earliest period. At first (1701) it was issued by a justice of the peace (2 *Stat.* 182), afterwards by the chief justice (1716–1723). In 1734 (3 *Stat.* 388), and ever since, by *the enquirers and collectors.* * * In these cases, and in others, where double tax executions are spoken of, it seems plain that the legislature has considered it competent for a tax collector to adapt his execution to the exigencies of the case," &c.

As to the admitted necessity for an equal and uniform rate of taxation, it is sufficient to say that the assessment is upon the

property, according to its value, and applies equally to all defaulters. *The State* v. *Railroad Corporations*, 4 *S. C.* 376; *United States* v. *Singer*, 15 *Wall.* 121.

But, if in all this we should be in error, it has not been made to appear that what is required of the comptroller-general is his plain ministerial duty under the law. We have been referred to Section 66 of the act of 1874, as showing his ministerial duty in the premises. That section is in these words: "The comptroller-general shall, from time to time, prepare and transmit to the several county auditors, all such forms and instructions as he may deem necessary to carry into effect the provisions of this act, *and decide all questions that may arise as to the true construction of the same, or in relation to the duty of any officer under the same,* and the forms thus transmitted shall be used by all county, town and municipal officers. The instructions thus given shall be obeyed by, and the decisions thus made shall be binding upon, all county, town and municipal officers." We do not see that this section imposes any plain ministerial duty on the comptroller-general, in case of alleged error on the part of a county auditor.

"To be entitled to a writ of *mandamus,* the relator must show that the respondent is bound to the performance of some certain, specific duty, of a ministerial character, imposed by law. It is *certain* when it must be absolutely performed, and the officer has no discretion. It is *ministerial* where an individual has such legal interest in its performance, that neglect becomes a wrong to him." *Morton, Bliss & Co.* v. *Comptroller-General,* 4 *S. C.* 431.

To have corrected an alleged error in a tax duplicate, is not a plain ministerial duty, but requires the exercise of discretion and judgment, especially when, according to the terms of the law, there has been no error. As the law reads, it was the duty of the auditor to add, and of the comptroller-general to have enforced, the fifty per cent.; but, in the face of the provision, we are asked to compel the comptroller to strike it off, on the ground that the law is unconstitutional. That can hardly be considered a duty "certain" and allowing of "no discretion," which can only be made to appear by ignoring the law as it stands. It is not the province of the comptroller-general to

decide upon the constitutionality of laws, under which it is his duty to act in supervising the collection of taxes. Besides, the comptroller has already rendered his judgment in the matter, and it has passed beyond his control.

Mr. High says: "As regards the duty of officers entrusted by law with the equalization of taxes and assessments, the courts may properly interfere by the writ (*mandamus*) to set such officers in motion, and compel them to act, upon an application properly presented by a taxpayer dissatisfied · with the tax assessed against him. * * * But *mandamus* will not go to a board of supervisors, requiring them to make corrections in the assessment of taxes for their county, *after the assessments have been completed* and warrants have been issued to the receiver of taxes, and the matter has passed beyond the control of the supervisors. * * * The courts will not interfere with or control the action of such officers, when they have actually passed upon such application. The abatement or reduction of taxes improperly assessed is, in such cases, essentially a judicial rather than a ministerial act. * * * Nor, in such cases, can the ministerial officer object that the act of the legislature authorizing the tax is unconstitutional, since it is not in the province of such officers to determine the constitutionality of laws; nor will the courts, upon summary proceedings in *mandamus*, determine as to the constitutionality of statutes affecting the rights of third persons." *High Extr. Rem.* § 140.

The petition for a writ of *mandamus* is refused.

SIMPSON, C. J., and McIVER, A. J., concurred.