STATE *EX REL.* WALKER, CLERK OF COURT, v. DERHAM,
COMPTROLLER GENERAL,

Appropriations—Pensions.—The General Assembly may appropriate
money by act separate from general appropriation act, but the act of
1901, 23 Stat., 753, construed not to appropriate $150,000 for pen-
sions, but only to provide that so much shall be annually appropri-
ated for that purpose; and the comptroller general can only lawfully
draw his warrant in favor of a clerk of the Circuit Court for the
pro rata share of pensions going to his county appropriated by
general appropriation act.

Petition for mandamus in the original jurisdiction of this
Court by J. Frost Walker, as clerk of the court of the county
of Richland, to require J. P. Derham, comptroller general,
to draw his warrant in his favor for pensions for citizens of
Richland County entitled thereto, on basis of $150,000 ap-
propriated for the whole State.

*Attorney General G. Duncan Bellinger,* for petitioner,
cites: *History of pension legislation:* Acts 1887, pp. 826,
448; acts 1888, p. 26; acts 1894, pp. 714, 825; acts 1896, p.
185; acts 1897, p. 495; acts 1898, p. 785; acts 1890, pp. 409,
484; acts 1901, p. 753. *Reference by title to defunct act can
have no resurrecting effect:* 23 Ency., 277, 344; 9 Ore., 62;
57 Miss., 243; 9 Mich., 366; 25 Miss., 445. *The amended
act of 1901 appropriates $150,000 per pensions:* Con., art.
XIII., sec. 5; art. X., sec. 9; 4 Md., 189; 4 Neb., 216; 23
Ency., 362; 2 Fread. Con. R., 657; 2 Spear, 137; 1 Bay, 93;
15 S. C., 582; 23 Ency., 329, 361; 2 Bail., 334; 6 Stat., 286;
Smith's Com. on Stat., 759, 820, 827, 843; 58 Conn., 490;
80 Cal., 227; 29 Ark., 131; 8 L. R. A., 68; 4 Md., 189; 9
Mon., 370; 4 Neb., 216; 20 Ind., 332; 15 Tex., 319.

*Mr. Jno. P. Thomas, jr.,* for respondent, *after giving his-
tory of pension legislation practically as given by attorney
general,* cites: *As to construction of the two acts:* 21 Ala.,
459. *The pension act of 1901 can, in no view of the matter,
be regarded as authority for drawing money from the trea-*

*sury:* Con., art. X., sec. 9, 12; art. I., sec. 17, 9; 1 Black. Com., p. 333; 1 Ency., 2 ed., 514, 515; 80 Col., 220; 45 Col., 149; 20 Ind., 338; 8 La. Ann., 68; 18 Neb., 221; 27 Ark., 131; Endlich, sec. 40; Black on Int. of Laws, p. 170; appropriation act 1901, sec. 11; 164 U. S., 596.

July 24, 1901. The opinion of the Court was delivered by

Mr. Justice Pope. The petitioner, as clerk of court for the county of Richland, of the State of South Carolina, on the 29th April, 1901, made a demand upon the respondent, as comptroller general of the State of South Carolina, that he should issue to him his official warrant or warrants in the aggregate sum of $3,731.60 on the State Treasurer as the amount due the pensioners of Richland County, S. C., who had been soldiers or sailors in the service of the State or in the Confederate States in the war from the year 1861 to 1865, inclusive, in accordance with the provisions of an act entitled "An act to amend 'An act to provide for pensions for certain soldiers and sailors now residents of South Carolina, who were in the service of the State or of the Confederate States in the late war between the States,' approved 19 February, 1900, by increasing the amount of appropriation, and further prescribing the distribution of the same." See 23 Stat. at Large, 753, *et sequitur.* This demand was refused by the comptroller general on the ground that the appropriation named in the aforesaid act, to wit: the sum of $150,000, was not an appropriation of said specific sum; but that the only appropriation by law was the sum of $100,000, which sum was set out as required in the appropriation act for the year 1901, and that instead of the petitioner, as clerk as aforesaid, being entitled to his warrant or warrants for the sum, in the aggregate, of $3,731.60, he was only entitled to a warrant or warrants for the sum, in the aggregate, of $2,476.84. Whereupon the petitioner, as clerk as aforesaid, exhibited his petition in this Court, in the original jurisdiction thereof, against the respondent, as comptroller general

of this State, wherein he set out by appropriate allegations his right to demand of the respondent, as comptroller general, the warrants of the latter on the State treasurer for the sum of $3,731.60 as pensions for soldiers and sailors, or the widows thereof, of the late war between the States, and residing in Richland County, in said State. The respondent in his return denied that he was entitled, as such comptroller general, under the laws of this State, to draw his warrant or warrants on the State treasurer for the sum of $3,731.60, but on the contrary was only required under the laws of this State to draw his warrant for the sum, in the aggregate, of $2,476.84, which latter he avowed his willingness to do.

There were no issues of fact raised, only conclusions of law. These issues were heard before this Court on the 6th day of May, 1901, and owing to the importance of a prompt payment of the pensions to those entitled to the same, the Court pronounced its judgment on the 15th May, 1901, and stated that the reasons for such judgment would be given later in this term. The judgment was as follows: *"Per Curiam.* On hearing the petition herein and the return thereto, and after argument of counsel, it is ordered and adjudged, that the prayer of the petition be refused and the petition dismissed. It is further ordered and adjudged, that the money appropriated in the general appropriation act passed at the last session of the General Assembly, to wit: the sum of $100,000, be distributed according to the provisions of the act entitled 'An act to provide for pensions for certain soldiers and sailors, now residents of South Carolina, who were in the service of the State or of the Confederate States in the late war between the States,' approved the 19th day of February, A. D. 1900 (23 Stat. at Large, p. 409), as amended by an act entitled 'An act to amend sec. 1 of an act entitled "An act to provide for pensions for certain soldiers and sailors now residents of South Carolina, who were in the service of the State or of the Confederate States in the late war between the States," approved 19th February, 1900, by increasing the amount of appropriation, and further pre-

scribing the distribution of the same,' approved 19th day of February, A. D. 1901. The reasons for the foregoing judgment will be given in an opinion hereafter to be filed."

Briefly, our reasons for the above judgment are as follows: The act of the General Assembly of this State entitled "An act to amend sec. 1 of an act entitled 'An act to provide for pensions, &c.'" approved the 19th day of February, 1901, 23 Stat. at Large, 409, amongst other things, provided as follows: That its purpose was to amend sec. 1 of an act to provide for pensions, &c., approved 19 February, 1900, by increasing the amount of appropriation from $100,000 to $150,000, and further prescribing the distribution of the same. This was practically the title to said act of 1901. The language of sec. 1 of said act was as follows: "Be it enacted, &c., That sec. 1 of an act entitled 'An act to provide for pensions for certain soldiers and sailors now residents of South Carolina, who were in the service of the State or of the Confederate States in the late war between the States,' approved 19 February, 1900, be and the same is hereby amended by striking out the words 'one hundred' and inserting in lieu thereof 'one hundred and fifty' before the word 'thousand,' on lines two and three of said section, and by adding at end of said section the following, to wit: *Provided, further,* In case the same or such amount as shall be appropriated shall be more than sufficient, then the amount so appropriated shall be distributed proportionally among all those legally entitled to receive the same; so that said section when so amended shall read as follows: Sec. 1. The sum of *at least* one hundred and fifty thousand dollars *shall be* annually appropriated to pay the pensions provided for by this act, and in case the same or *such amount as shall be appropriated* shall be insufficient, then the amount so appropriated shall be distributed proportionally among those legally entitled to receive the same: *Provided,* That those pensioners described in subdivision (a), sec. 4, herein, shall have been first paid in full: *Provided, further,* In case the same, or such amount as shall be *appropriated,* shall be more than

sufficient, then the amount so appropriated shall be distributed proportionally among all those legally entitled to receive the same" (italics ours, except as applied to the words *"Provided* and *Provided, further"*). The question meets us at the threshold, does this sec. 1, of the act of 1901, appropriate the sum of $150,000, so that without further legislative action, the State officers whose duty it was to draw and pay warrants for funds in the State treasury could be required to do so? We know of no law which confines the General Assembly in making appropriations to embracing such appropriations in what is known as the act for general appropriations of any fiscal year, or to what is known as the act making appropriations to pay legislative expenses. It is competent, though unusual, for the General Assembly to provide for appropriations of the public money by other acts than the two just mentioned. What is meant by the phrase legislative appropriations of money? To appropriate money is to set it apart, to designate some specific sum of money for a particular purpose or individual. To do this effectually, it is necessary that the power in the legislature to defeat the application of the money to some particular object or individual by providing for some other use thereof, cannot exist except by some legislative action afterwards to the contrary. Thus, in 1878, certain money raised by taxes was ordered to be applied, set apart or appropriated to the payment of the interest on a particular public debt, but was not so applied, and thereafter the General Assembly directed a different application of the money which by an act of the General Assembly had been appropriated to the payment of interest on certain parts of the public debt. The State treasurer declined to pay the money in his hands as treasurer to any second object. Upon proceedings for mandamus in the original jurisdiction of this Court, it was declared by the Court that the legislature had control over the funds in the State treasury which had not been actually applied to an appropriation previously made by act, so that by a later act the money could be diverted. *State ex rel. Branch* v. *Leaphart, as*

*State Treasurer*, 11 S. C., 458. In Rapalje & Lawrence's Law Dictionary, 1 vol., p. 72, it is said: "By Government— Appropriation of supplies is the mode by which the legislative branch of the government regulates the manner in which the public money voted at each session is to be applied to the various objects of expenditure, and the appropriation bills are annual statutes passed for that purpose"—citing 1 Bl. Com., 335n; 2 Steph. Com., 579n; U. S. Con., art. I., sec. 9. In Webster's International Dictionary, to appropriate money is "To set apart for, or to assign to a particular person for use in exclusion of all others." In art. X., sec. 9, of the State Constitution of 1895, it is provided: "Money shall be drawn from the treasury only in pursuance of appropriations made by law."

The next question we will consider is whether the sum of $150,000 for pensions is in the act of 1901 provided as an appropriation of so much money. We do not think so; for, *first,* there is no definite sum set apart by said act for pensions. The language is, the sum of at least $150,000 shall be annually appropriated—thus showing that no *definite sum* is appropriated, which the act says *shall be* appropriated— thus indicating that some action by the General Assembly in the future is contemplated; *second,* the section in question by its language negatives an actual appropriation of $150,000 by the words: "and in case the same *or such amount as shall be appropriated* shall be insufficient, then the amount so appropriated shall be applied proportionately, &c.;" and *third,* in the second *proviso,* it is stated in this section, in case "the *same or such amount as shall be appropriated,"* negatives the idea that this section carries an actual appropriation.

Again, the policy of the State, as it is ascertained by the acts themselves since the year 1887, at which time pensions were first provided for soldiers, sailors, or the widows of soldiers or sailors, has always been to have an act fixing the amount to be appropriated for such pensions, and is always accompanied by an act making an actual appropriation of such amount, which is called the general appropriation act.

See act of 1887, XIX. Stat. at Large, 826, providing for pensions. See act of 1887, XIX. Stat. at Large, 848, appropriating the sum of $50,000 to pay pensions, and contained in what is known as the general appropriation act. See act of 1888, amending the act of 1887 in regard to pensions, and found in XX. Stat. at Large, 29, providing $50,000 as the amount to be paid for pensions. In the general appropriation act, this sum is set apart. XX. Stat. at Large, 24. And so it continues down to the year 1901. In this last year, the general appropriation act fixes the amount at $100,000, while the act for pensions fixes *at least* $150,000. As was suggested by counsel for respondent, it may be that the pension act, approved 19th February, 1901, was to guide future legislatures. So we fail to see that the petitioner has sustained his contention.

We have directed that the appropriation of $100,000 shall be paid in accordance with the provisions of the act of 1900 (23 Stat. at Large, 409), but as amended by the act of 1901 (23 Stat. at Large, 754), because we hold that the said act of 1900 is still of force, except as amended by the said act of 1901, and it is expressly provided in the latter act that the pensions shall be governed by the said act of 1900: *"Provided further,* In case the same or such amount as shall be appropriated shall be more than sufficient, then the amount so appropriated shall be distributed proportionally among all those entitled to receive the same."

We do not think art. XIII., sec. 5, of the Constitution of 1895, which merely requires the General Assembly of this State at its first session after the adoption of this Constitution, to provide proper pensions, &c., affects the question of pensions in this State except as furnishing direct authority to the State legislature to provide pensions. It recognizes no particular amount as proper to be paid. The only plan it requires to be put in operation is that soldiers and sailors, &c., shall be guaranteed a pension.

Thus it follows that our previously announced judgment is proper, for the reasons here assigned.