13244

SCROGGIE v. SCARBOROUGH, STATE TREASURER, *ET AL.*

(160 S. E., 596)

*Mr. A. W. Holman,* for petitioner,

Mr. C. E. Sawyer

Mr. W. L. DePass, Jr., for Farmers' & Taxpayers' League.

Messrs. Cole L. Blease, James H. Hammond, D. J. Jenkins, R. M. Jefferies, R. E. Babb, Thomas & Lumpkin, John M. Daniel, Attorney General, Cordie Page and J. Ivey Humphrey, Assistants Attorney General, for certain respondents.

September 16, 1931.

The opinion of the Court was delivered by MR. JUSTICE CARTER.

This action, instituted in the original jurisdiction of the Court, was brought by the petitioner, a citizen and taxpayer, against the respondent Scarborough, as State Treasurer, for the purpose of having him permanently enjoined from paying certain vouchers or checks issued to the members of the General Assembly as expense money in accordance with an appropriation made by that body at its 1931 session. When the matter came on for hearing, the Court ordered the petitioner to amend his pleading by making one or more per-

sons of each of the following classes parties.to the proceeding:

"(1) Members of the General Assembly who have received from the Comptroller General warrants upon the State Treasurer for the item of expenses amounting to $260.00 each contained in the Appropriation Bill of 1931 and are in favor of the constitutionality of the appropriation attacked by the petitioner;

"(2) Members of the General Assembly who received such warrants and are opposed thereto, and

"(3) Assignees, endorsees or otherwise holders of said warrants or checks of State Treasurer."

By the petition as so amended, it is alleged that the General Assembly, at its 1931 session, passed an Act whereby it appropriated $260.00, designated as expense money, for each of its members; that this appropriation "is unlawful and unconstitutional in that there is no provision of law, by statute or constitution, which entitles said members to said compensation as salary, expenses or otherwise; all of which are now fixed and determined by the statute laws and Constitution of the State," and is in conflict with Sections 9, 19, and 30 of Article 3 of the State Constitution. It is further alleged that the payment of the $260.00 would be unlawful for the reason that the appropriation Act "carried no authority for the payment thereof as by law required and that there is no legal warrant for the payment of said sum, or any other sum in excess of $400.00 per session and mileage"; and for the additional reason that it would be illegal and void because of noncompliance with Section 70 of the appropriation Act with reference to itemization.

The State Treasurer, by return and answer, alleged that, in issuing the vouchers or checks in question, he was merely acting in accordance with the provisions of the appropriation act of 1931, and with his conception of his duty under that act. The respondents of the first class alleged that the action of the Legislature complained of by the petitioner

was constitutional and valid. Members of the second class submitted the question of the constitutionality of the act to the judgment of the Court without argument. Members of the third class pleaded the constitutionality and validity of the appropriation, and alleged further that the vouchers or checks which had been transferred to them, by assignment or otherwise, had been accepted without notice of any defect of title or infirmity in such instruments.

At the hearings had before this Court, oral arguments were made by counsel representing some of the parties and by some of the litigants themselves; and these, with the several printed arguments filed, have been of much assistance to the Court in arriving at its conclusions.

The main question to be considered is: Did the appropriation complained of increase the compensation of the members of the General Assembly in violation of the provisions of the Constitution?

Let it be said at the outset that we fully recognize the gravity of declaring, under any circumstances, an act of the Legislature, a co-ordinate branch of the government, to be invalid. Judge Cooley, in his Constitutional Limitations, quoted with approval in *Butler v. Ellerbe,* 44 S. C., 256, 22 S. E., 425, has this to say: "It is a solemn act, in any case, to declare that that body of men, to whom the people have committed the sovereign function of making the laws for the commonwealth, have deliberately disregarded the limitations imposed upon this delegated authority, and usurped power which the people have been careful to withhold; and it is almost equally so when the act which is adjudged to be unconstitutional appears to be chargeable rather to careless and improvident action, or error in judgment, than to an intentional disregard of obligation."

At its 1931 session (page 398, § 2), which was one of unusual length, the General Assembly appropriated, in addition to $400 as pay, the sum of $260 as expenses, for each of its members, in lump sums as follows:

"Senators (salaries and expenses) . . . . . . . . . .$ 31,160.00"
"Representatives (salaries and expenses) . . . . .$ 82,380.00"

The provisions of the Constitution and statute law, which the petitioner contends to have been violated by the appropriation of "expense money," are as follows:

Section 9 of Article 3 of the Constitution: "Members of the General Assembly shall not receive any compensation for more than forty days of any one session."

Section 19 of Article 3. "Each member of the General Assembly shall receive five cents for every mile for ordinary route of travel in going to and returning from the place where its sessions are held; no General Assembly shall have the power to increase the per diem of its own members; and members of the General Assembly when convened in extra session shall receive the same compensation as is fixed by law for the regular session."

Section 30 of Article 3: "The General Assembly shall never grant extra compensation, fee or allowance to any public officer, agent, servant or contractor after service rendered, or contract made, nor authorize payment or part payment of any claim under any contract not authorized by law; but appropriations may be made for expenditures in repelling invasions, preventing or suppressing insurrection."

Sections 16, 17, and 18 of the Civil Code of 1922:

"(16) Members of the General Assembly shall receive as compensation for their services the sum of four hundred dollars for each session and mileage at the rate of five cents per mile for the actual distance traveled in the most direct route going to and returning from the place where the session of the General Assembly shall be held; and the Speaker of the House of Representatives shall receive a salary of three hundred and fifty dollars per session, in addition to his compensation as a member. * * *

"(17) The Clerk of the Senate shall, on the first day of each session, draw a pay certificate of five dollars in favor of each Senator, and the Clerk of the House of Representa-

tives shall likewise, on the first day of each session, draw a pay certificate of five dollars in favor of each member of the House of Representatives, which shall be given in lieu of all stationery and postage to be used by such Senator or Representative in his official capacity during each session, and to be in addition to his per diem and mileage.

"(18) The Clerks of the Senate and of the House of Representatives shall each furnish for their Houses, respectively, for their use and for the use of their several Committees, such stationery as may be necessary for each session; the amount so to be furnished for the Senate not to exceed one hundred dollars, and that so furnished for the House of Representatives not to exceed one hundred and fifty dollars."

The limitations upon the power of the Legislature contained in the quoted sections of the Constitution may be thus summarized: (1) The Legislature may not provide compensation for its members for more than forty days in each session (Article 3, § 9). (2) It cannot increase the per diem of its own members (Article 3, § 19). (3) It cannot provide more than five cents per mile as mileage for its members (Article 3, § 19). (4) It cannot provide a different compensation for its members when convening in extra session, from that provided by law for the regular session (Article 3, § 19). (5) It cannot grant extra compensation, fee, or allowance, to any public officer after service rendered, or authorized the payment of any claim under any contract not authorized by law (Article 3, § 30).

Respondents argue that, no other limitation on the power of the Legislature being found in any of these sections of the Constitution, so far as the case at bar is concerned, the Legislature, in all other phases of the matters, is supreme and is the people.

Section 9 of Article 3 of the Constitution, considered with Section 19 of the same article, clearly prohibits increasing the compensation of members of the Legislature during their term of office. The payment of "expenses," *eo nomine,* how-

ever, is not prohibited by the quoted provisions, and it there-fore becomes necessary to examine these provisions, with special reference to the meaning of the terms used to characterize payments to be made or not to be made to mem-bers of the General Assembly, for the purpose of ascertain-ing whether the payment of expenses is included, under proper construction, in the limitations created by such provi-sions.

The terms "fee" and "allowance" are found only in Article 3, § 30, which forbids the grant of extra compensation, fee, or allowance to any public officer after services rendered. The contention of respondents is that this section is not applicable in the case at bar, as the appropriation for expenses for members of the General As-sembly was made before their service was ended and before their term of office expired. Even if this position is not sound, we are constrained to hold that Section 30, which is a general provision relating to public officers, would not be applicable to members of the Legislature, under the recogn-ized rule of statutory construction, applicable also to consti-tutional construction, that: "Where, in a legislative enact-ment, a special provision is made as to a subject which would otherwise be embraced in a general provision on the same subject the special provision is held to be an exception, and not intended to be embraced in the general provision." *State v. Lewis,* 141 S. C., 207, 139 S. E., 386, 392. *State v. Boden,* 92 S. C., 393, 75 S. E., 866.

Section 30 relates, as stated, to public officers generally, while Sections 9 and 19 relate to members of the General Assembly only. Although public officers include legislators, since the compensation and expenses of legislators are treated specifically in Sections 9 and 19, the members of the Legislature would not be included in the general term, "public officers," for the purposes of Section 30. This view is supported by the fact that Section 30 occurs, not among the twenty-six sections of Article 3 which relate to the Gen-

eral· Assembly, but among the nine remaining sections, which are of a general or miscellaneous character.

Narrowing our inquiry, therefore, to the effect of Sections 9 and 19, we find that the General Assembly is forbidden to increase the per diem of its own members, and to receive "any compensation for more than forty days of any one session." Generally, the term "per diem," as used in connection with compensation, wages, or salary, means pay for a day's services, and it here clearly refers to the compensation provided for in Section 9. The word "compensation," as here used, ordinarily means pay for services rendered, and it is sometimes held to be synonymous with "salary." In ascertaining its meaning as used in Section 9, recourse may be had to other sections and language of the Constitution. *Powell v. Hargrove,* 136 S. C., 345, 134 S. E., 380; *State v. Rector,* 158 S. C., 212, 155 S. E., 385. "The presumption is that the same meaning attaches to a given word or phrase which is repeated in a Constitution, unless the contrary is made to appear, and hence the whole instrument should be examined to ascertain what that meaning is." *Pine v. Commonwealth,* 121 Va., 812, 93 S. E., 652. In Section 30, the words "compensation," "fee," and "allowance" are used co-ordinately, and apparently it was intended that each of them should have a particular meaning. "Allowance" evidently refers to payments of whatever nature other than those covered by "compensation" and "fee." Compensation," therefore, as used in Section 30, must have its usual meaning, for if it includes other payments covered by the term "allowance," then the use of the latter term is entirely superfluous; a result foreign to the genius of statutory and constitutional construction. No good reason appears why the word "compensation" should be given one meaning in Section 30, and another in Section 9. From all of which we conclude that this word, as used in Section 9, has reference only to payment for services rendered, and does not include an allowance for expenses.

But petitioner contends that the appropriation of $260.00 to each member of the Legislature (arrived at, it is agreed by all parties, through mathematical calculation), while made "under the guise of expenses," is in reality an increase of compensation and so unconstitutional. It is a well-recognized principle that, in whatever language a statute may be framed, its purpose and its constitutional validity must be determined by its nature and reasonable effect. 6 R. C. L., 81; 12 C. J., 787. So, if it should be found in the case at bar that the effect of the appropriation in question is to increase the compensation of, members of the General Assembly, such appropriation would be clearly unconstitutional.

In the consideration of the question whether the payment of expenses is in violation of a constitutional provision prohibiting, either expressly or by implication, an increase in the compensation of public officers during their term of office, a distinction has been made between legislative, or official, expenses and personal expenses. This distinction is clearly expressed in *State ex rel. Griffith v Turner,* 117 Kan., 755, 233 P., 510, 511: "The distinction between expenses that are legislative and those that are personal is that legislative expenses are those that are necessary to enable the Legislature to properly perform its functions, while those that are personal are those that must be incurred by a member of the Legislature in order to be present at the place of meeting—expenses for his personal comfort and convenience, which have nothing to do with the performance of his duty as a member of the Legislature. Personal expenses are those incurred for rooms, meals, laundry, communications with their homes, and other things of like character."

We know of no case in which it is held that the payment of official expenses, even as thus limited, is in violation of a provision of a Constitution prohibiting an increase in, or limiting the amount of, "compensation," and we apprehend that such position could not be maintained; such expenses

are a necessary part of the operation of government. It is held, however, by some authority, that the payment of personal expenses is in effect an increase in compensation, and hence not allowable under such constitutional provisions. See *Griffith v. Turner, supra; Jones v. Hoss,* 132 Or., 175, 285 P., 205; *Ashton v. Ferguson,* 164 Ark., 254, 261 S. W., 624; *State v. Clausen,* 142 Wash., 450, 253 P., 805; *Dixon v. Shaw,* 122 Okl., 211, 253 P., 500, 50 A. L. R., 1232; *Peay v. Nolan,* 157 Tenn., 222, 7 S. W. (2d) 815, 817, 60 A. L. R., 408.

In some cases, this conclusion is reached under a provision of the Constitution allowing members of the General Assembly a certain salary, or per diem, and a certain amount as mileage, the maxim, *"Expressio unius est exclusio alterius,"* being resorted to as an aid to construction, the reasoning being that as the Constitution provides for payment of mileage, a personal expense, there is a necessary implication, under the maxim, that no other personal expenses can be paid. *State ex rel. Griffith v. Turner, supra; Dixon v. Shaw, supra; State v. Clausen, supra.* We are not sure that we agree with this reasoning, first, because mileage, which represents the expenses of necessary travel in order that a member of the General Assembly may attend its meetings, may be regarded as partaking of the nature of official expenses, and, second, because we think that too great stress should not be laid upon the quoted maxim in construing a State Constitution and particularly a provision which relates to the legislative department. In *Pine v. Commonwealth, supra,* it was said: "The maxim, *'Expressio unius est exclusio alterius,'* though often of importance and value, is not of universal application, even in the interpretation of State Constitutions. They are the fundamental, permanent law of the land, providing for the future as well as the present, and should carry out the principles of government as gathered from the instrument when read as a whole. * * * Only those things expressed in such positive af-

firmative terms as plainly imply the negative of what is not mentioned, in view of the known policy of the State, will be considered as prohibiting the powers of the Legislature. The principle of the maxim should be applied with great caution to those provisions of the Constitution which relate to the legislative department, and the exclusion should not be made unless it appears to be a plainly necessary result of the language used."

And in *State v. Martin*, 60 Ark., 343, 30 S. W., 421, 424, 28 L. R. A., 153 : "This Court is thoroughly committed to the doctrine that the maxim *'Expressio unius est exclusio alterius'* is not to be applied with the same rigor in construing a State Constitution as a statute and that only those things expressed in such positive affirmative terms as plainly imply the negative of what is not mentioned will be considered as inhibiting the powers of the legislature."

See, also, *Matthews Company v. A. C. L R. Co.*, 102 S. C., 494, 86 S. E., 1009.

On the other hand it has been held that payment of expenses not being prohibited by the Constitution, the allowance of incidental expenses which are of such nature that the duties of the office cannot be performed without incurring them is not unconstitutional, it being the intent of the statute, in allowing expenses, to save the official salary to the officer, as his pay, without encroachment through expenses imposed by his official position. *McCoy v. Handlin*, 35 S. D., 487, 153 N. W., 361, L. R. A., 1915-E, 858, Ann. Cas., 1917-A, 1046; *Christopherson v. Reeves*, 44 S. D., 634, 184 N. W., 1015. It is objected to these decisions that the members of the Court had a personal interest in the outcome of the *McCoy case*, but we are not so much concerned with the possible motive of the members of the Court in arriving at a conclusion as with the logic and force of the reasoning embodied in the opinions.

However, in the view we take of the instant case, it may be decided upon the assumption that only official expenses are properly allowable under the provisions

of our Constitution, as we find nothing in the record which would justify us in deciding as a matter of fact that the expenses for which members of the General Assembly are to be reimbursed by the appropriation in question are other than official expenses. For the Legislature, a co-ordinate branch of the government, this Court has the highest respect, and there is a presumption that the appropriation was made for a proper purpose within the provisions of the Constitution; the burden, therefore, was upon the petitioner to show, by any proper means, that the expenses to be covered by the appropriation were personal and not allowable under such provisions. In this he has failed. There is nothing before the Court to show the nature of these expenses, except the statement in the argument of petitioner's counsel to the effect that the appropriation was to defray personal expenses, and it is well settled that such statements cannot be considered; the facts must be shown by the record itself. See *State v. Wilder*, 13 S. C., 344; *Turpin v. Sudduth*, 53 S. C., 295, 31 S. E., 245, 306; *Whetstone v. Livingston*, 54 S. C., 539, 32 S. E., 561; *Burkhim v. Pinkhussohn*, 58 S. C., 469, 36 S. E., 908. Furthermore, when the length of the legislative term is taken into consideration, the amount of the appropriation is not so great as to indicate on its face that it was made for other than official expenses. The 1931 session of the Legislature commenced on January 13 and ended on May 9, thus covering a period of almost four months. Petitioner's counsel states in his argument, however, that the Legislature during that time usually met on Tuesday and adjourned on Friday, and that it was actually in session for hardly more than sixty days. Even if this were conceded to be true, counsel loses sight of the fact that much important work of the General Assembly is done by committees when the Senate and House are not in session, and frequently during these recesses, committees and subcommittees, for the purpose of properly attending to the State's business, visit the many

institutions and agencies controlled by the State, situated not only in the capital city, but at other places.

In *State ex rel. Weldon v. Thomason*, 142 Tenn., 527, 221 S. W., 491, 492, decided in 1919, the Court considered a provision of the Constitution of Tennessee that "the sum of $4.00 per day and $4.00 for every twenty-five miles going to and returning from the seat of government shall be paid the legislators as a compensation for their services." At its 1919 session, the Legislature appropriated $150.00 for each of its members "for stenographic work and other necessary expenses." The Court held that under this provision of the Constitution the Legislature could not increase the compensation of its members either directly or indirectly, but that the Constitution contained no inhibition on the power of the Legislature to appropriate money for expenses for all departments of the government, including those of its own members; and in holding the Act unconstitutional, made the following declaration: "The language used in the Act is '$150.00 for stenographic work and other necessary expenses to each member of the General Assembly.' This is a clear and unambiguous statement of the purpose for which the appropriation is made. The language is plain, and does not require amplification or the application of any rules of statutory construction in order to ascertain the legislative intent. *Hickman v. Wright*, 141 Tenn., 412-418, 210 S. W., 447. It is always to be presumed that the Legislature acted in good faith and within constitutional limits; and this declaration of the Legislature is a conclusive finding of fact and imports a verity upon its face which cannot be impugned by litigants, counsel, or the Courts, but is absolutely binding upon all."

A similar question came before the same Court again in 1928, in the case of *Peay v. Nolan*, 157 Tenn., 222, 7 S. W. (2d), 815, 60 A. L. R., 408, which is strongly relied on by petitioner. This action arose out of an appropriation by the Legislature of $750.00 for expenses to each of its members,

the language of the appropriation being practically identical with that considered in the *Thomason case*. The Court re-affirmed the general principles announced in the *Thomason case,* declaring, however, that to sustain an appropriation in gross as an allowance for expenses, rather than a forbidden increase of compensation, the sum must be within such reasonable limits as to warrant a conclusion that it might be covered by a certified statement of expenses incurred. It was held that, while the Legislature could not by the use of words prevent judicial inquiry as to the object and effect of a statute, the Court could not call to its aid extrinsic facts in determining the matter. The opinion is susceptible of no other inference than that if the appropriation had been in a reasonable amount, although made in a lump sum, it would have been declared constitutional. It might be, of course, that an appropriation of this kind would be in an amount so great as to show on its face, without the aid of extrinsic facts and circumstances, that it was made to defray personal expenses, as in the *Peay case,* but we have here no such situation.

Petitioner also relies upon the case of *Dixon v. Shaw,* 122 Okl., 211, 253 P., 500, 50 A. L. R., 1232, decided in 1927. The Constitution of Oklahoma (Article 5, § 21), provided that "members of the Legislature shall receive six dollars per diem for their services during the session of the Legislature, and ten cents per mile for every mile of necessary travel in going to and returning from the place of meeting of the Legislature, on the most usual route, and shall receive no other compensation. * * * "The Legislature made an appropriation of certain funds to be used in the payment of hotel room rent and meals of its members while at the Capital attending its session. The Court held that all legislative expenses might be properly paid, but that personal expenses of the members of the Legislature was compensation other than that provided, and was inhibited by the Constitution. It will be noted that in this case the

appropriation shows on its face that it was made to defray personal expenses.

We have examined a great many other authorities, but do not think that a review of them would be helpful, as those already referred to seem to us to substantially present the varying views of the Courts on the question at issue. On the whole, we find nothing in the record which would justify us in declaring the appropriation attacked in the case at bar to be unconstitutional.

In reaching this conclusion, the Court has necessarily kept in mind certain fundamental principles of construction; namely, that all statutes are presumed to be constitutional, and every reasonable doubt will be resolved in favor of their validity (*McKiever v. Sumter*, 137 S. C., 266, 135 S. E., 60; *Powell v. Hargrove*, 136 S. C., 345, 134 S. E., 380; *Means v. Highway Department*, 146 S. C., 19, 143 S. E., 360); and that the provisions of the State Constitution are not a grant but a limitation of legislative power, and should not be construed to place limitations beyond their clear meaning. *Duke Power Company v. Bell*, 156 S. C., 299, 152 S. E., 865; *Walpole v. Wall*, 153 S. C., 106, 149 S. E., 760; *Ex parte Lynch*, 16 S. C., 32; *Pelzer v. Campbell Company*, 15 S. C., 581, 40 Am. Rep., 705. Furthermore, the construction placed upon a constitutional provision by a legislative body through its enactments is entitled to great respect, and in doubtful cases should be followed. *Hildebrand v. High School District*, 138 S. C., 445, 136 S. E., 757; *Evans v. Beattie*, 137 S. C., 496, 135 S. E., 538. An allowance for expenses is no new thing in this State. The Legislature in recent years has frequently voted expense money to its own members and other State officials. The members of the General Assembly itself, under an old law, have been receiving annually $5.00 each for stationery and postage, although there is no provision of the Constitution expressly authorizing such allowance. It is thus seen that the General Assembly, with the continued acquiescence of the

people, has construed the Constitution to permit it to vote expenses to its own members and other officials. See 12 C. J., 715.

As to petitioner's further position that as neither the ■ Code nor the appropriation Act for 1931 expressly and in so many words directs the payment of the expense money to members of the Legislature, there is no warrant of law for such payment and it should, therefore, be enjoined. In *State ex rel. Walker v. Derham,* 61 S. C., 258, 39 S. E., 379, 380, this Court said: "To appropriate money is to set it apart—to designate some specific sum of money for a particular purpose or individual." Hundreds of appropriations are made without any statutory authority for their payment other than the appropriation Act, and, in view of the fact that an appropriation of money for a specific purpose is exclusive, it would seem that the mere appropriation is sufficient authority to pay it out for such purpose. If any judicial authority should appear necessary to sustain this position, it is found in *Brooks v. Jones,* 80 S. C., 443, 61 S. E., 946. That case involved the amount of salary to be paid to the Clerk of the Supreme Court for the year 1908. A statute of 1893 fixed the salary of this position at $800.00, and that amount was specifically and annually appropriated from 1894 to 1907, both inclusive. The Legislature of 1908 included in the appropriation bill an item of $1,000.00 "for the pay of the Clerk of the Supreme Court;" there was no further statutory authority for the payment of that amount. The Comptroller General refused to issue his warrants for the Clerk's pay at the rate of $1,000.00 per annum, but took the position that the yearly salary was only $800.00 as fixed by the Act of 1893. Though there was a difference of opinion among the members of the Court as to whether the $1,-000.00 salary became effective at the beginning of the year 1908 or at the date of approval of the appropriation Act for that year, all the members agreed that the Clerk was entitled to salary at the rate of $1,000.00 a year, holding that

it was competent for the Legislature, by means of an appropriation Act, to increase or lessen the salary of an officer (where there is no constitutional inhibition), if it is apparent that such was the Legislature's intention. If the Legislature, merely by appropriating for an officer's salary an amount greater than that fixed by a prior statute, could increase the salary during the time for which the appropriation Act was in effect, clearly it could, in the same manner, authorize the payment of properly allowable expenses which were not provided for by permanent statute; that is, the Code of 1922, or some subsequent Act. On the point that an appropriation of money to a specified object is an authority to the proper officers to pay the money, see, also, *Ristine v. State,* 20 Ind., 328; *State v. Kenney,* 9 Mont., 389, 24 P., 96.

As to the contention that the payment of the expense money would be unlawful for the reason that the expenses are not itemized in detail, as required by Section 70 of the Act, this section reads as follows: "That all moneys can be expended only by drawing vouchers upon the Comptroller General, such vouchers to be accompanied by statements of expenditure classified according to the budget classification by objects of expenditure (as defined in the budget for the fiscal year beginning January 1, 1931, and itemized in detail). * * * "

We do not know just the extent to which the itemization referred to in Section 70 was intended generally to go, but the same body, the Legislature, which made the appropriation for expenses of its members also enacted the provisions of Section 70 into law. The appropriation for expenses is in the same item with the appropriation for salary. The salary of each member, $400.00, is paid from this item, and it is reasonable to assume, and it is assumed by all parties, that it was intended that each member should receive $260.00 as expenses. We must conclude, therefore, under these circumstances, that the itemization of $260.00 for each member

of the Legislature for expenses was deemed by the Legislature to be sufficient for the purposes of Section 70 which it enacted to cover this subject. We think that the itemization made was entirely sufficient. See *State ex rel. Key v. Bond,* 94 W. Va., 255, 118 S. E., 276.

The judgment of this Court, therefore, is that the temporary restraining order heretofore issued be dissolved, and the petition dismissed.

MR. CHIEF JUSTICE BLEASE and MR. JUSTICE STABLER concur.

MR. JUSTICE BONHAM concurs in result.

MR. JUSTICE COTHRAN did not participate.

MR. CHIEF JUSTICE BLEASE (concurring) : In addition to my concurrence in the opinion of Mr. Justice Carter, I approve the observations of Mr. Justice Bonham as to the equities and justice of the conclusion of this Court.

MR. JUSTICE BONHAM (concurring) : Inasmuch as I do not concur in full with the opinion proposed in this proceeding, I shall present my views in this separate opinion. I concur in the conclusion of the opinion of Mr. Justice Carter, which declares that the temporary restraining order, granted by the Chief Justice, should be discharged and the permanent injunction sought should be refused. For this position, it behooves me to give my reasons.

At the session of 1931, a joint resolution was adopted to the effect that there be included in the General Appropriation Bill a sum sufficient to pay each member of the General Assembly the sum of $260.00, in addition to the sum of $400.00 fixed by previous Act of the Legislature as pay for members for each session. Vouchers for the said sums were issued by the Comptroller General, drawn on the State Treasurer, for their payment. Thereupon, the petitioner brought this proceeding for the purpose of having the Court permanently enjoin the State Treasurer from paying them.

On motion of petitioner's counsel, his Honor, the Chief Justice, issued a rule which required the State Treasurer to

show cause why he should not be permanently enjoined from paying these vouchers, and at the same time enjoined him from doing so, pending the determination of the Court on the rule to show cause. Subsequently, this order was amended so as to require the petitioner to make as parties respondent: (1) Members of the Legislature, representing that class who uphold the constitutionality of the appropriation. (2) Members who deny the constitutionality of the appropriation. (3) Assignees, indorsees, or otherwise holders of said warrants, or checks of the State Treasurer. This was done. Returns were made by the State Treasurer and representatives of each of the said classes. As I shall discuss but one phase of the case, it is not material to enter into further detail of the facts. It may be said, however, that it appears from the return of the treasurer and others that before the rule to show cause and the restraining order were granted, some of the vouchers issued by the Comptroller General on the State Treasurer, had passed into the hands of third persons.

If it were conceded that the Act or Joint Resolution making this appropriation is unconstitutional, does it follow, therefore, that the prayer for injunction should be granted? I do not think so.

In proceedings of this nature, it is proper that all the conditions and circumstances appurtenant to and surrounding the situation be taken into consideration to the end that intelligent understanding prevail and exact justice be done. Let us, then, consider it from the standpoint of the equity of the situation.

At various times during the last twenty-five years members of the Legislature have voted themselves extra compensation under the guise of "expense money." There was objection raised in the Assembly and criticism by the public prints. Nevertheless, the custom was apparently acquiesced in by the public and all the departments of the government. So that the business public were lulled into a sense of se-

curity in dealing with and accepting the vouchers issued in pursuance of such legislation. No proceeding was instituted by any one to restrain the payment of the vouchers issued by the Comptroller General upon the State Treasurer for the payment of the extra compensation thus voted. Naturally, the public felt that it might deal with these vouchers as with any other negotiable paper current in the commercial and financial world.

Now it appears from the returns to the rule in this proceeding that before the order was issued restraining the Treasurer from paying the vouchers issued by the Comptroller General, some of them had passed into the hands of third persons; banks, the hotels, charitable institutions, and others. To enjoin the payment of these vouchers now in the hands of innocent holders for value, who had received them with no knowledge of any invalidity, holders who were probably satisfied that the credit and good faith of the State were their ample security and protection against loss, would, it seems to me, be most inequitable and unfair.

For years the General Assembly has voted to every department of the government extra money under the head of "expenses." It would be impossible to regain this money and put it back into the treasury. It would seem therefore a minor consideration in this case to restrain the payment of the State's checks duly issued by the State's fiscal officer, some of which are in the hands of third persons, who have given value for them in reliance upon the faith of the State.

For these reasons, I concur only in the result of the leading opinion.

Mr. Justice Cothran: In view of the fact that upon two occasions, while I was a member of the House of Representatives, I formed and expressed an opinion in reference to the constitutionality of similar action on the part of the House of Representatives, in making an appropriation for additional expenses to the members, and acted upon that opinion, I do not think that I can approach the decision of

the issue in this matter with that impartiality to which the parties interested are entitled, I decline to participate in the decision of this case.