14091

GODFREY v. HUNTER, CLERK OF HOUSE OF REPRESENTATIVES, *ET AL.*

(180 .S. E., 468)

*Messrs. Nichols, Wyche & Russell,* for petitioner, ■

*Messrs. John M. Daniel, Attorney General, J. Ivey Humphrey* and *M. J. Hough, Assistant Attorney Generals,* for respondents,

June 12, 1935.

*Per Curiam.*

Proceeding by H. C. Godfrey, petitioner, in the original jurisdiction of this Court, praying for order of mandamus to require James E. Hunter, Clerk of the House of Representatives, to issue to petitioner a pay voucher for the sum of $310.00, sought to be amended for the sum of $400.00 on the hearing, and to require A. J. Beattie, as Comptroller General of the State of South Carolina, to issue to petitioner a warrant for said amount, and requiring Eustace P. Miller, as treasurer of the State of South Carolina, to pay same, which petitioner alleges is due him as salary and compensation as a member of the House of Representatives for the extraordinary session of the General Assembly of the State of South Carolina, commencing on September 14, 1931, and ending September 24, 1931, in which period of time there were nine legislative days.

The Appropriation Bill (becoming an Act upon its approval by the Governor on September 24, 1931), passed at this extraordinary session (37 St. at Large, p. 1097), provided as follows:

"That there is hereby appropriated from the State Treasury a sufficient sum of money to bear the expenses of the

extraordinary session of the General Assembly convened September 14, 1931, in accordance with the following schedule: The President of the Senate, the Speaker of the House, the Clerk of the Senate and the Clerk of the House shall each receive the sum of $25.00 per day for each day which the respective Houses are in session; each member of the General Assembly shall receive as an expense allowance the sum of $10.00 per day for each and every day's service rendered. All other attaches of the General Assembly, including the Engrossing Department, who have been employed at this session, shall receive a per diem for each day of service rendered at the rate of their base pay as fixed in the Appropriation Act of 1931" (Section 1).

And (Section 2): "There is also appropriated a sufficient sum of money to pay the mileage and stationery certificates of the members, the necessary approved accounts of both Houses and the printing for this session."

And (Section 3): "That wherever in this Act the term 'per day' is used it shall be construed to mean legislative day."

Petitioner, in addition to mileage and $5.00 for stamps, stationery, etc., received the sum of $90.00 for his services as a member of the House of Representatives for this extraordinary session of the General Assembly.

While it is unnecessary for the purpose of this decision, it will be noted that on September 19, 1931, petitioner gave notice to the late and lamented, the Honorable J. Wilson Gibbes, then Clerk, and the late and lamented, the Honorable John K. Hamblin, then Speaker of the House of Representatives, as follows: "In accepting the pay vouchers for our salary, which voucher has been drawn in accordance with an Appropriation Bill passed in Extraordinary Session beginning Monday, Sept. 14, 1931, we wish to certify that we accept this voucher as only a partial payment of the salary provided for us by the Constitution of South Caro-

lina and in no wise do we relinquish our constitutional rights to collect the remainder of this salary as so provided."

Petitioner was a member of the Free Conference Committee on the part of the House, to whom was referred the Appropriation Bill hereinabove quoted from, and signed the Free Conference Report fixing the compensation of the members at $10.00 per day, although this compensation is referred to in the said Bill, afterwards Act, as an expense allowance, but even a casual reading thereof will disclose that it was the intent of the Legislature that the $10.00 per day was intended as the compensation of the members.

There is only one question in this case. Is the $400.00 per member for regular sessions of the General Assembly, as fixed by Section 16, Civil Code of 1922 (Section 2054, Code 1932), an annual salary or a per diem at $10.00 per day for 40 days?

So much of Section 9 of Article 3 of the Constitution of 1895, as refers to compensation of the members of the General Assembly, is as follows:

"*Compensation of Members of.*—Should the casualties of war or contagious disease render it unsafe to meet at the seat of government, then the Governor may, by proclamation, appoint a more secure and convenient place of meeting. Members of the General Assembly shall not receive any compensation for more than forty days of any one session: *Provided,* That this limitation shall not affect the first four sessions of the General Assembly under this Constitution."

Section 19 of the same article is as follows: "*Mileage— Increase of Per Diem—Extra Session.*—Each member of the General Assembly shall receive five cents for every mile for ordinary route of travel in going to and returning from the place where its sessions are held; no General Assembly shall have the power to increase the per diem of its own members; and members of the General Assembly when con-

vened in extra session shall receive the same compensation as is fixed by law for the regular session."

Section 16 of the Civil Code of 1922 (Section 2054, Code 1932), is as follows: *"Compensation of Members.*—Members of the General Assembly shall receive as compensation for their services the sum of four hundred dollars for each session and mileage at the rate of five cents per mile for the actual distance traveled in the most direct route going to and returning from the place where the session of the General Assembly shall be held; and the Speaker of the House of Representatives shall receive a salary of three hundred and fifty dollars per session, in addition to his compensation as a member: *Provided,* That this Section, as amended, shall not take effect until after the general election for members of the General Assembly for the year 1920."

Section 17 of the Code of 1922 (Section 2055, Code 1932), is as follows: *"Stationery and Postage of Members.* —The clerk of the Senate shall, on the first day of each session, draw a pay certificate of five dollars in favor of each Senator, and the clerk of the House of Representatives shall likewise, on the first day of each session, draw a pay certificate of five dollars in favor of each member of the House of Representatives, which shall be given in lieu of all stationery and postage to be used by such Senator or Representative in his official capacity during each session, and to be in addition to his per diem, and mileage."

Section 9 of Article 3 of the Constitution fixes the number of days for which members may receive compensation at not more than 40 for any one session. The framers of the Constitution knew from experience and observation that regular sessions of the General Assembly always lasted for at least 40 days, and that 40 days should be sufficient in which to transact the business of the State.

Section 19 of Article 3 of the Constitution (1) provides a mileage of five cents for members going to and returning from the sessions; (2) prohibits the General Assembly from

increasing *"the per diem of its own members"* (italics added), and (3) fixes the same compensation for extra sessions as regular sessions.

In addition to this section specifically referring to the pay of the members as their *per diem*, it contemplated that there would be occasion to call extra sessions and allow a *per diem* for such extra session the same as for a regular session. This within itself is conclusive that the members are to receive compensation on a *per diem* basis, and that such amount as the General Assembly fixed as compensation for its members would not be an annual salary; otherwise, the Constitution would have provided expense money for extra sessions, or no mention at all would have been made of pay for extra sessions. To provide compensation for extra sessions is repugnant to the idea that the $400.00 fixed as the pay of members of the General Assembly for regular sessions is an annual salary.

Having in mind the sections of the Constitution above quoted and referred to, the General Assembly fixed the compensation to be received by its members at $10.00 per day for not over 40 days, or $400.00.

From the wording of Section 17 of the Civil Code of 1922 (Section 2055, Code 1932), hereinabove set forth in full, it will be seen that the Legislature recognized the fact that the compensation of its members was on a per diem basis, for after providing for stamps and stationery, there is this language used: "and to be in addition to his per diem and mileage." Note: The words per diem, Code of 1932, Section 2055, appear in italics.

In the case of *Scroggie v. Scarborough, State Treasurer,* 162 S. C., 218, at page 224, 160 S. E., 596, 599, Mr. Justice Carter in writing the opinion of the Court, after having quoted Section 9 of Article 3, and Section 19 of same article, and Sections 16 and 17 of the Civil Code of 1922, stated that the limitations upon the power of the Legislature contained in the quoted sections of the Constitution

may be summarized: "(1) The Legislaure may not provide compensation for its members for more than forty days in each session (Article 3, § 9). (2) It cannot increase the per diem of its own members (Article 3, § 19). (3) It cannot provide more than five cents per mile as mileage for its members (Article 3, § 19). (4) It cannot provide a different compensation for its members when convening in extra session, from that provided by law for the regular session (Article 3, § 19)."

The extra session, for which petitioner seeks the sum of $310.00 additional compensation in his original petition, but upon the hearing sought to increase to $400.00 on the theory that the $90.00 which he had received was merely expense money and not compensation, was in session nine legislative days. He received $10.00 per day, the same per diem as for a regular session, and has therefore received the full compensation to which he was entitled.

Under this view of the case, it becomes unnecessary to discuss the notice given by petitioner to the Speaker and Clerk on which some stress was laid by petitioner's attorneys, nor is it necessary to consider if petitioner is estopped from claiming additional compensation after having signed the Free Conference Report on the Bill appropriating only Ninety ($90.00) Dollars per member for this extra session of the General Assembly.

The petition is dismissed, and the writ of mandamus prayed for refused.

MR. CHIEF JUSTICE STABLER, MESSRS. JUSTICES CARTER, BONHAM and BAKER and MR. ACTING ASSOCIATE JUSTICE E. C. DENNIS concur.

MR. JUSTICE FISHBURNE did not participate.